David B. Rosenbaum, No. 009819
Andrew G. Pappas, No. 034432
Emma J. Cone-Roddy, No. 034285
Brandon T. Delgado, No. 035924
OSBORN MALEDON, P.A.
2929 North Central Avenue, 20th Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
apappas@omlaw.com
econe-roddy@omlaw.com
bdelgado@omlaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The No Labels Party of Arizona, an Arizona political party,<br><br>Plaintiff,<br><br>vs.<br><br>Adrian Fontes, in his official capacity as the Secretary of State of Arizona,<br><br>Defendants. | No.<br><br>**MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE**<br><br>**(Hearing Requested)** |

Plaintiff The No Labels Party of Arizona ("Plaintiff" or "No Labels Arizona") hereby moves for a preliminary injunction against Defendant Adrian Fontes, in his official capacity as the Secretary of State of Arizona (the "Secretary"). No Labels Arizona has lodged with this motion a proposed Order to Show Cause and proposed form of preliminary injunction.

## I. INTRODUCTION

Secretary Fontes has determined that No Labels Arizona must nominate candidates for Corporation Commissioner and U.S. Senator in Arizona, even though the party has unequivocally disavowed any desire to do so. No Labels Arizona has chosen not to nominate candidates for any office other than President and Vice President. Forcing No Labels Arizona to participate in electoral races against its will violates both Arizona law

and the U.S. Constitution.

Under Arizona law, a party must nominate its non-presidential candidates in a primary election, but a party's participation is required if—*and only if*—the party intends to make nominations for those offices in the ensuing general election and desires to have the names of its candidates for those offices printed on the general election ballot. The U.S. Constitution also guarantees fundamental freedoms of speech and association that preserve a party's organizational autonomy over its entirely private and internal decision of whether to participate in an election for a public office.

Exercising its statutory and constitutional rights, No Labels Arizona determined and set forth in its Constitution and Bylaws that its sole objective in Arizona is to nominate a consensus candidate for President and Vice President. No Labels Arizona does not want to nominate candidates for Corporation Commissioner or U.S. Senator (or, for that matter, for congressional, state, judicial, county, or precinct office). Forcing No Labels Arizona to do so would not only violate Arizona state law, it also would infringe on the organization's constitutionally guaranteed rights. A preliminary injunction is necessary because No Labels Arizona is likely to succeed on the merits, it would suffer irreparable harm if the Secretary were not enjoined, the balance of equities falls heavily in No Labels Arizona's favor, and the public interest demands solicitude for statutory and constitutional rights.

## II. BACKGROUND

**A. No Labels Arizona's goals and the boundaries of its association.**

No Labels Arizona's purpose is the potential nomination of candidates for President and Vice President for the 2024 General Election. *See* Ex. 1, Decl. of Gail Koshland Wachtel ("Wachtel Decl.") ¶¶ 4–5. It envisions the potential nomination as being a unity ticket with bipartisan-oriented candidates fulfilling that role. *Id.* ¶ 4.

Consistent with this objective, No Labels Arizona has decided that it will not nominate candidates for any other state or federal office to appear on the 2024 general election ballot. *Id.* ¶ 5. The party's exclusive focus on the potential nomination of

candidates for President and Vice President is vital, given the public's limited attention span and the organization's finite time and resources available prior to the 2024 General Election. *Id.* ¶ 7. The distraction, message-dilution, and division that would accompany an effort to participate in any down-ballot elections could compromise No Labels Arizona's ability to achieve its goal of potentially nominating a unity ticket for President and Vice President. *Id.*

No Labels Arizona's Constitution and Bylaws set forth this focused mission. *Id.* ¶¶ 4–6, Ex. A. Under these governing documents, No Labels Arizona is to "obtain ballot access for candidates nominated by No Labels [Arizona] for the federal offices of President and Vice President," but it expressly "shall not nominate" a "candidate for a state, county, municipal, school, or district office or position." *Id.* ¶ 6, Ex. A. No Labels Arizona has deliberately structured itself this way because it has determined this is the best way to pursue its associational goals. *Id.* ¶ 7.

**B. Secretary Fontes forces No Labels Arizona to nominate candidates and participate in elections for Corporation Commissioner and U.S. Senator.**

Recently, two individuals filed statements of interest to run as nominees for Corporation Commissioner and U.S. Senator, holding themselves out as No Labels Arizona candidates. *See* Ex. 2. By filing these statements of interest, the individuals apparently intend to collect signatures and submit petitions to run in the August 1, 2024, primary for these offices, and then appear as "No Labels" nominees on the November 2024 general election ballot. *Id.* At least one of these individuals has publicly stated that the "goal is to torture No Labels." Reid J. Epstein and Lisa Lerer, *Fearing Third-Party Spoilers vs. Trump, Biden Allies Try to Squash Them*, N.Y. Times, Oct. 8, 2023, https://www.nytimes.com/2023/10/08/us/politics/biden-trump-third-parties-no labels.html.

But No Labels Arizona does not object to the Secretary's acceptance of these individuals' statements of interest because they apparently intend to harm No Labels Arizona. No Labels Arizona would object even if these individuals had earnest motives

and were ideal candidates. Indeed, No Labels Arizona would object if the Arizona equivalent of Mother Teresa were to file a statement of interest for Corporation Commissioner or U.S. Senator. Consistent with its core mission and structure, No Labels Arizona simply does not wish to nominate *anyone* for Corporation Commissioner or U.S. Senator. Wachtel Decl. ¶¶ 4–7, Ex. A. The only race in which No Labels Arizona may potentially participate and nominate candidates is the election for President and Vice President, should it nominate individuals for those offices. *Id.* Forcing No Labels Arizona to participate in primary and general elections for offices in which it has no organizational interest would undermine the party's core objective and its means for pursuing the same. *Id.* ¶ 7.

No Labels Arizona has repeatedly informed the Secretary of its intention to nominate only candidates for President and Vice President. *Id.* ¶¶ 8–10, Ex. B, Ex. C, Ex. D. A June 2, 2023 letter to the Secretary's counsel, for example, explained that as of that date "the No Labels Party will nominate a Presidential ticket 'as provided in § 16-344,' but it does *not* desire to have the names of any other candidates printed on the official ballot at the 2024 general election and will therefore not hold a primary election for any office." *Id.* ¶ 8, Ex. B. No Labels Arizona's Chair sent another letter to the Secretary on August 11, 2023 opting out of the State's 2024 Presidential Preference Primary and informing the Secretary again that "the No Labels Party will nominate candidates only for the offices of President and Vice President, and does not desire to have the names of candidates for any other office printed on the official general-election ballot at the 2024 general election." *Id.* ¶ 9, Ex. C.

After learning of the statements of interest filed by the two individuals seeking to run as No Labels Arizona candidates for Corporation Commissioner and U.S. Senator, on August 14, 2023, No Labels Arizona again informed the Secretary by letter that A.R.S. § 16-301(A) and the U.S. Constitution require his office to reject the statements of interest. *Id.* ¶ 10, Ex. D. The letter emphasized that Arizona law permits No Labels Arizona to limit the party's participation to just those primary and general elections for

the public offices of its choice. *Id.* The letter also cautioned the Secretary that forcing No Labels Arizona to participate in an election against its will would be unconstitutional. *Id.*

Secretary Fontes responded on September 22, 2023, by letter from his Elections Director that any candidate of a party will be permitted to participate in Arizona's primary election. *Id.* ¶ 11, Ex. E. The response letter added that the "candidate who receives the highest number of votes in the Primary Election will be the political party nominee and appear on the General Election ballot." *Id.* Ignoring the authorities cited in No Labels Arizona's letter, including A.R.S. § 16-301(A) and the First and Fourteenth Amendments, the response letter therefore suggested that the candidates had their own right to appear on a ballot as a political party's candidate or nominee that superseded No Labels Arizona's rights. *Id.*

### III. LEGAL STANDARD

A plaintiff seeking a preliminary injunction must show: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the 'balance of hardships . . . tips sharply towards' it, as long as the second and third *Winter* factors are satisfied." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

### IV. ARGUMENT

**A. No Labels Arizona is likely to succeed on the merits.**

    **1. Count One: Violation of A.R.S. § 16-301(A).**

Arizona law specifies when a candidate's name should be included on a primary election ballot:

> At a primary election, each political party entitled and ***intending*** to make nominations for the ensuing general or special election, ***if it desires*** to have

the names of its candidates printed on the official ballot at that general or special election, shall nominate its candidates for all elective, senatorial, congressional, state, judicial, county and precinct offices to be filled at such election except as provided in § 16-344.[1]

A.R.S. § 16-301(A) (emphases added).

"[I]f the plain meaning of [a] statute is unambiguous, that meaning is controlling." *Close v. Thomas*, 653 F.3d 970, 974 (9th Cir. 2011) (citation omitted); *see also McMurray v. Dream Catcher USA, Inc.*, 220 Ariz. 71, 75 ¶ 12 (App. 2009) ("clear and unequivocal" text of statute is controlling).

A.R.S. § 16-301(A) is plain and unambiguous. It twice makes clear that just because a party is *entitled* to participate in a primary election for a particular public office does not mean it *must* do so. The party must "intend[]" to make a nomination for that public office and "it"—the political party—must "desire[]" to have the name of the party's nominee for such office appear on the general election ballot. The word "intending" and the phrase "if it desires" have clear meanings. The Secretary would render those words meaningless surplusage. But Arizona statutes are presumed to avoid "mere surplusage, and instead give meaning to each word, phrase, clause, and sentence . . . so that no part of the statute will be void, inert, redundant, or trivial." *Ariz. State Univ. Bd. of Regents v. Ariz. State Ret. Sys.*, 242 Ariz. 387, 389 ¶ 7 (App. 2017) (cleaned up). Giving meaning to those words, § 16-301(A) guarantees a political party the right to decide whether to participate in the primary and general election for a public office. A political party that decides not to nominate a candidate through a primary election in a race covered by that statute must live with the consequence that "no candidate for that office for that party may appear on the general or special election ballot." A.R.S. § 16-302. Arizona law thus does not mandate a party's participation in the election.

Even if the statute were susceptible to a different construction—one that mandated

---

[1] The cross-referenced statute, A.R.S. § 16-344, does not apply here because the offices at issue do not involve the office of presidential elector, which is the office that is addressed in § 16-344.

- 6 -

a political party's participation in an election against the party's wishes—the court should adopt the statutory construction that would not create a constitutional violation. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) ("[T]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality" (citation omitted)). As discussed in the following section, construing Arizona statues to mandate No Labels Arizona's participation in elections against its will would violate No Labels Arizona's First and Fourteenth Amendment rights. The Court should avoid that statutory construction and, instead, construe A.R.S. § 16-301, consistent with its plain meaning, to give No Labels Arizona the right to choose the elections in which it will participate.

Exercising its statutory right, No Labels Arizona repeatedly informed Secretary Fontes that it neither intends nor desires to nominate candidates for any congressional, state, judicial, county, or precinct office, including U.S. Senator and Corporation Commissioner, to appear on the 2024 general election ballot. Wachtel Decl. ¶¶ 8-10, Ex. B, Ex. C, Ex. D. The Secretary seeks to override No Labels Arizona's decision. Through his Elections Director, the Secretary has decided that any registered member of a party will be permitted to run as the party's candidate in a primary election for any state or federal office, regardless of the party's expressed intention not to participate in that election. *Id.* ¶ 11, Ex. E. Further, the Secretary has determined that the "candidate who receives the highest number of votes in the Primary Election will be the political party nominee and appear on the General Election ballot." *Id.*

The Secretary's actions violate A.R.S. § 16-301(A). His decision to compel No Labels Arizona to nominate a candidate in an election in which the party expressly desires not to participate contravenes Arizona law. Thus, No Labels Arizona is likely to succeed on its claims for declaratory and injunctive relief. *See* 28 U.S.C. § 2201 (allowing the Court to provide No Labels Arizona with a declaration of its rights); A.R.S. § 12-1832 (same); *Melendres v. Arpaio*, 784 F.3d 1254, 1264 (9th Cir. 2015) (noting the district court has discretion to enter an injunction). Again, granting relief to No Labels Arizona

based on this statute allows the Court to avoid addressing the constitutional issues set forth in Count II. *See United States v. Kaluna*, 192 F.3d 1188, 1197 (9th Cir. 1999) (en banc) ("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision. This is a fundamental rule of judicial restraint." (quoting *Jean v. Nelson*, 472 U.S. 846, 854 (1985))).

### 2. Count Two: First and Fourteenth Amendment via Section 1983.

Although the Court can, and should, decide this case based solely on Arizona law, if the Court concludes that the Arizona statute mandates or gives the Secretary discretion to require that a political party participate in elections against its wishes, then it should rule that the Secretary's actions here violate No Labels Arizona's constitutional rights. No Labels Arizona is entitled to declaratory and injunctive relief under 42 U.S.C. § 1983 because the Secretary has (1) acted under color of state law and (2) deprived No Labels Arizona of rights secured by the Constitution. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

The Secretary indisputably acted under color of state law. The Secretary is the State of Arizona's chief election officer, responsible for the administration and implementation of election laws in Arizona. Pursuant to this authority, the Secretary, through his Elections Director, overrode No Labels Arizona's decision not to nominate candidates and participate in elections for offices other than President and Vice President. Wachtel Decl. ¶ 11, Ex. E. The Secretary, in his official capacity and through the conduct of his employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

As for the substantive constitutional violation, the Supreme Court has construed the First Amendment as protecting a right to associate with others for the purpose of exercising the freedom of speech expressly safeguarded by that amendment. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). "[A] corollary of the right to associate is the right not to associate." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000). This First Amendment right "is protected by the Fourteenth Amendment from infringement by

any State." *Democratic Party of U.S. v. Wis. ex rel. La Follette*, 450 U.S. 107, 121 (1981).

Perhaps nowhere is this freedom of association protection more critical than with political parties and their process for selecting nominees, which sit "at the very heart of the freedom of assembly and association." *Cousins v. Wigoda*, 419 U.S. 477, 491 (1975) (Rehnquist, J. concurring in the result). A party's "determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals, is protected by the Constitution." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 224 (1986). "Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being." *Jones*, 530 U.S. at 574 (citation omitted).

Courts have repeatedly and "vigorously affirm[ed] the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party 'select[s] a standard bearer who best represents the party's ideologies and preferences.'" *Jones*, 530 U.S. at 575 (quoting *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989)). A state may not substitute its own judgment for that of the party in determining "the structure which best allows it to pursue its political goals." *Tashjian*, 479 U.S. at 224. This "special protection" allows the party to "choose a candidate-selection process that will in its view produce the nominee who best represents its political platform." *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202 (2008). Indeed, political parties are largely "autonomous in their extension of the right to represent their party." *Duke v. Cleland*, 783 F. Supp. 600, 602 (N.D. Ga.), *aff'd*, 954 F.2d 1526 (11th Cir. 1992).

A party's rights in this regard can be "circumscribed" *only* if it chooses to avail itself of "the right to have [its] candidates appear with party endorsement on the general-election ballot." *Lopez Torres*, 552 U.S. at 203. An organization has a core, fundamental right to structure its party and choose for itself the public offices for which it will put forward a nominee to appear on the general election ballot and thereby accept or reject "circumscription" from the state. This is how A.R.S. §16-301(A) operates.

Much of the jurisprudence in this area involves weighing the extent of a political party's associational burden against a state's regulatory interest. But the courts evaluating the constitutionality of a blanket primary (in *Jones*), a mandatory closed primary (in *Tashjian*), and other similar election features examined political parties that had opted to have their candidates appear with party endorsement on general election ballots. This case is different. Here, the State is trying to compel a party to participate in an election by forcing it to have candidates appear with party endorsement on a general election ballot. This effort is even more invasive than regulations that pose "party raiding" or similar concerns, because it would erase the party's autonomy altogether. A party's decision to accept or reject state "circumscription" and its attendant consequences is, by its nature, entirely private and internal to the party and cannot be overridden.

To be sure, if No Labels Arizona had wanted its candidates to appear with party endorsement on the general election ballot for any down-ballot offices, the nominees for those offices would have been selected in the state-run primary election and any one of its members could have filed a statement of interest to become a candidate in that primary. But that is not what happened. Instead, No Labels Arizona determined that its ballot line in the 2024 general election may be used *only* for the offices of President and Vice President. Wachtel Decl. ¶¶ 4–7. No Labels Arizona's Constitution and Bylaws explicitly prohibit it from participating in any other election. *Id.* ¶ 6, Ex. A. Forcing No Labels Arizona to do so would violate its Constitution and Bylaws and substantially undermine its goals. *Id.* ¶ 6–7, Ex. A. It would also violate the U.S. Constitution, because a state "may not constitutionally substitute its own judgment for that of the Party" with regards to a party's strategic choices. *La Folette*, 450 U.S. at 123–24.

The Secretary's actions appear premised on the notion that individual citizens have a freestanding right to appear on a ballot as a party's candidate or nominee. Wachtel Decl. Ex. E. They do not. Even a political party is not constitutionally "entitled to have its nominee appear on the ballot as that party's candidate." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997); s*ee also Wash. State Grange v. Wash. State*

*Republican Party*, 552 U.S. 442, 453 n.7 (2008) ("The First Amendment does not give political parties a right to have their nominees designated as such on the ballot."). It follows that an individual candidate cannot have a constitutional right to appear on a ballot as a party's candidate or nominee, particularly when doing so would violate the First Amendment rights of the party. As the Supreme Court explained in *Lopez Torres*, any individual's right to run as a candidate for public office does not include a "constitutional right to have a 'fair shot' at winning the party's nomination." 552 U.S. at 205. Indeed, any individual is free to run as a candidate and compete in an election without any party affiliation at all.

Overriding No Labels Arizona's considered judgment and its constitutional guarantees, Secretary Fontes would require No Labels Arizona to nominate candidates for offices it has chosen to avoid. Wachtel Decl. ¶¶ 11–12, Ex. E. The Secretary's actions violate No Labels Arizona's right to determine its boundaries and structure itself to best achieve its goals. The Secretary may disagree with No Labels Arizona's policy and goals, but he may not substitute his judgment for that of the party. *La Follette*, 450 U.S. at 126 (reversing judgment where the state statute "would violate Party rules").

Accordingly, No Labels Arizona is likely to succeed on its Section 1983 claim for declaratory and injunctive relief against Secretary Fontes.

**B. No Labels Arizona is likely to suffer irreparable harm.**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burn*, 427 U.S. 347, 373 (1976); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (citation omitted)) (*Melendres I*). Thus, the constitutional injury to No Labels Arizona cannot be remedied if nothing is done to enjoin the Secretary's actions. "And once the election occurs, there can be no do-over and no redress." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014).

**C. The equities tip strongly in favor of No Labels Arizona.**

"[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation and internal quotation marks omitted).

The equities tip overwhelmingly in No Labels Arizona's favor. In fact, there appears to be no weight at all on the Secretary's side of the fulcrum. In his letter, the Secretary invoked the public's right to vote. Wachtel Decl. Ex. E. But no one's right to vote would be affected by the issuance of an injunction here, just as no one's right to vote has been affected by No Labels Arizona's decision to forgo participation in an election for any office other than President and Vice President. Moreover, the individuals who have sought to run on a non-existent No Labels Arizona ballot line are still free to run as independents or in the primary of any party that has chosen to compete in the election for that office. *See, e.g.*, *Belluso v. Poythress*, 485 F. Supp. 904, 912 (N.D. Ga. 1980) (noting the candidate could seek office "independently or as the candidate of [another] political party"). The Secretary cannot override No Labels Arizona's rights just because individuals profess interest in using a No Labels Arizona ballot line. *Duke v. Massey*, 87 F.3d 1226, 1232–33 (11th Cir. 1996) ("Although Duke is correct in identifying his First and Fourteenth Amendment interests, those interests do not trump the Republican Party's right to identify its membership based on political beliefs nor the state's interests in protecting the Republican Party's right to define itself.").

When considering the competing burdens on voters, political parties, and candidates, courts have protected against state-compelled participation and association. For example, courts have refused to allow a state's election ballot to create an unreciprocated association between a party and a candidate. *Jones*, 530 U.S. at 581–82 ("We can think of no heavier burden on a political party's associational freedom" than "forced association"). Courts have also rejected a candidate's insistence that she be allowed to compete for a party's general election nomination via direct primary. *Lopez Torres*, 552 U.S. at 202–04; *see also Belluso*, 485 F. Supp. at 912 (candidate has no right

to associate "with an unwilling partner, the Republican party in Georgia," and "to the degree that rights of association are implicated, we think these rights militate in favor of leaving a party free to limit access to its own primary ballot."); *Massey*, 87 F.3d at 1234 ("The Republican Party has a First Amendment right to freedom of association and an attendant right to identify those who constitute the party based on political beliefs."); *Cleland*, 783 F. Supp. at 602 ("there is no right whatsoever to be included on the primary ballot of a party which does not, itself, extend that right."). Courts have likewise recognized that a "minor" political party's First Amendment rights are "severely burden[ed]" when a state "forces" it to run "candidates for races [it] want[s] nothing to do with." *Libertarian Party of Ill. v. Scholz*, 872 F.3d 518, 524–25 (7th Cir. 2017).

In sum, the equities weigh heavily in favor of No Labels Arizona because there is a substantial burden on No Labels Arizona's rights and a minimal, if any, burden on the rights of voters and candidates.

**D. An injunction protecting constitutional rights is in the public interest.**

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres I*, 695 F.3d at 1002 (citation omitted); *accord Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest."). It is also "obvious" that compliance with a statute is in the public interest. *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011). Because Secretary Fontes' actions violate both A.R.S. § 16-301(A) and the First and Fourteenth Amendments, an injunction enjoining the Secretary's actions is in the public interest.

## V. CONCLUSION

For the foregoing reasons, the Court should order Secretary Fontes to show cause, and grant this motion for a preliminary injunction.

DATED this 19th day of October, 2023.

OSBORN MALEDON, P.A.


By /s/ David B. Rosenbaum
David B. Rosenbaum
Andrew G. Pappas
Emma J. Cone-Roddy
Brandon T. Delgado
2929 North Central Avenue, 20th Floor
Phoenix, Arizona 85012-2793

Attorneys for Plaintiff