KRISTIN K. MAYES
Attorney General
Firm State Bar No. 14000

Kara Karlson, Bar No. 029407
Karen J. Hartman-Tellez, Bar No. 021121
Senior Litigation Counsel
Kyle Cummings, Bar No. 032228
Assistant Attorney General
2005 North Central Avenue
Phoenix, AZ  85004-1592
Telephone (602) 542-8323
Facsimile (602) 542-4385
Kara.Karlson@azag.gov
Karen.Hartman@azag.gov
Kyle.Cummings@azag.gov
adminlaw@azag.gov

*Attorneys for Defendant Arizona
Secretary of State Adrian Fontes*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The No Labels Party of Arizona, an Arizona political party, | Case No: 2:23-cv-02172-JJT |
| Plaintiff, | |
| v. | **ARIZONA SECRETARY OF STATE'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| Adrian Fontes, in his official capacity as Arizona Secretary of State, | |
| Defendant. | |

Defendant Arizona Secretary of State Adrian Fontes ("Secretary") respectfully requests that this Court deny Plaintiff's Motion for a Preliminary Injunction ("Motion"). The No Labels political party is likely to fail on the legal merits, will not suffer irreparable harm from having more candidates on the ballot, and the balance of hardships and public interest tip sharply in the Secretary's favor because No Labels is attempting to eliminate the political rights of others. For these reasons, Plaintiff's request for an injunction should be denied.

## INTRODUCTION

No Labels is an Arizona political party, and can avail itself of all the benefits that this status confers. But it cannot override the constitutional and statutory framework regulating elections in Arizona. As a political party, No Labels has a constitutionally-protected interest in determining its nominees for the General Election, but that interest ends well short of the anti-democratic, life-tenured state committee that its national corporate entity, No Labels, Inc., has self-selected and can remove at will. No Labels is an Arizona political party, but that does not give it and its national corporate body the unilateral right to bar qualified No Labels candidates from the ballot.

When deciding which route to take to ballot access, No Labels, Inc. had a choice. It could either:

- Create a new political party which provides its hand-picked candidates for President and Vice President a "ballot line" for the 2024 General Election, as well as the opportunity for others affiliated with the No Labels party to seek elected office as a No Labels candidate and vote for qualified No Labels candidates; or

- Run its hand-picked candidates—who would be identified on the ballot and any relevant election information as "No Labels"—without sharing that political identity with any other candidates, for any office.

No Labels, Inc. chose the former, and qualified No Labels as an Arizona political party early this year.  After voluntarily electing to become a political party, and indeed vigorously defending that right in prior litigation, it cannot now seek to deny the rights of its own members to campaign as, and vote for, No Labels candidates that are not selected by No Labels, Inc.

No Labels is unlikely to prevail on the merits of its claim because it has wildly misconstrued Arizona statutes; furthermore, its First Amendment rights cannot be used as a sword to cut off the First Amendment rights of others.  No Labels, Inc. rejected the opportunity to run a "No Labels" candidate for President without becoming a political party that others could join.  And as a political party, it does not suffer irreparable harm because it has candidates on the ballot.  Finally, the balance of equities and public interest tip sharply in the Secretary's favor, as it is No Labels which seeks to override the democratic principles foundational to our democracy.

The founder of No Labels, Inc. CEO Nancy Jameson, says in defense of its corporate strategy to secure a ballot line that can be offered to potential presidential and vice presidential candidates: "We know how the game works in politics these days."[1] But our democracy is *not* a game.  The Court should deny No Labels' request for an injunction.

## BACKGROUND

In the late 1800s and early 1900s, Arizona was largely considered a progressive experiment, and the state constitution embraced many progressive reforms, including direct primary elections and "direct nomination" of United States Senators before the adoption of the 17th Amendment.  Ariz. Const. art. VII, §§ 9-10.  Indeed, the architects of Arizona's early government recognized "the legislation of old States has been found

---

[1] NBC News, *No Labels founder says 'we are not functioning' as a political party: Nancy Jacobson full interview*, (July 13, 2023) ("NBC Interview"), https://www.nbcnews.com/meet-the-press/video/no-labels-founder-says-we-are-not-functioning-as-a-political-party-nancy-jacobson-full-interview-188338245510 at 10:00-10:05.

1  unequal to the task of protecting the people from the growing, grasping, monopolizing
2  tendencies of railroads and other corporations," and sought to eliminate from the outset
3  "sham corporations claiming special and exclusive privileges."[2]

4  To enforce the direct primary provision of the constitution, Arizona law requires
5  partisan-affiliated candidates to participate in the primary election. A.R.S. § 16-301(A).
6  Failure to participate in the primary bars that candidate from using the more lenient
7  requirements for a party nomination to secure access to the general election ballot, and
8  prohibits the candidate from appearing on the general election ballot as a member of that
9  party *Id.*; A.R.S. § 16-302.

10  There are multiple ways for a presidential candidate to access the ballot in
11  Arizona. First, a candidate can be a member of a recognized political party, and file *de*
12  *minimis* nomination paperwork with the Secretary of State's office at least one hundred
13  days before the presidential preference election ("PPE"). A.R.S. § 16-242(B).
14  Alternatively, they may run as an unaffiliated candidate by filing petitions signed by at
15  least three percent of all voters who are not registered with another political party no
16  later than 5:00 p.m. one hundred days before the general election. A.R.S. § 16-341. No
17  signatures can be collected as an unaffiliated candidate, however, until the presidential
18  candidate files a nomination paper with the Secretary. *Id.*

19  No Labels, Inc. created and controls the Plaintiff No Labels. No Labels, Inc. is a
20  501(c)(4) based in Washington, D.C., which was created in 2009 and as of 2021 reported
21  gross income of $11,339,382. (Ex. 1, Form 990 at 1). It reported expenses of
22  $8,226,195 for "hosting several conference calls . . . weekly emails . . . [and] engaging
23  citizens through social media and online platforms to disseminate nonpartisan
24  information around core concepts of problem solving." (*Id.* at 2). As of 2021, No

---

[2] State of Ariz. Const. Conv., Address on Constitution for the State of Arizona at 4 (Oct. 2, 1891) *available at* https://azmemory.azlibrary.gov/nodes/view/135961?keywords=1891+constitution&type=all&highlights=eyIwIjoiY29uc3RpdHV0aW9uIiwiMiI6IjE4OTEifQ%3D%3D&lsk=49d94f5d6c25fccf543219ded646ab93.

3

1  Labels, Inc. stated that it did not "engage in direct or indirect political campaign
2  activities on behalf of or in opposition to candidates for public office." (*Id.* at 3).
3      No Labels, Inc. filed its petition for political party recognition with the Secretary
4  on February 10, 2023, including 56,971 signatures of purported qualified electors for
5  review. (Ex. 2, SOS Prelim. Filing Receipt to No Labels at 1). Pursuant to the 20%
6  sampling required by A.R.S. § 16-803 No Labels, Inc. was determined to have collected
7  41,663 valid signatures, exceeding the signature threshold of 34,127. (Ex. 3, No Labels
8  Receipt at 2). No Labels thus qualified for political party status on March 7, 2023. *Id.*
9  Despite successfully qualifying for the ballot, the founder of No Labels, Inc., Nancy
10 Jacobson has repeatedly stated that "we are not a party" and that the goal was to "offer
11 our ballot line" after Super Tuesday.[3]
12     It was not until August 11, 2023, that No Labels, Inc. appointed a state committee
13 that "accept[ed] and adopt[ed]" a constitution and bylaws. (DE 6-1 at 9). The "No
14 Labels Party" constitution and bylaws identifies it as "a state-level affiliate of No Labels,
15 Inc." and states that No Labels, Inc. appoints its state committee members and officers
16 for life or until they are "removed" by No Labels, Inc. (*Id.* at 11-12). Any vacancy on
17 the state committee "shall be filled by No Labels[, Inc.] or by a majority . . . at a
18 Convention of Membership upon the written consent of No Labels[, Inc.]" (*Id.* at 12).
19 "The Presidential and Vice-Presidential nominees of [the No Labels state committee]
20 shall be the candidates nominated at the No Labels national nominating convention."
21 (*Id.* at 14). The state committee "shall ensure that only one candidate may be nominated
22 for each office." (*Id.*)
23     Since becoming a political party, many Arizonans have registered with No
24 Labels. (Ex. 4, Ariz. Voter Registration Report (Oct. 1, 2023)). However, No Labels
25 has taken the position that these No Labels members cannot run for public office as a
26 member of their new party. (*Id.* at 29) ("No Labels respectfully requests that you refuse

---

[3] NBC Interview, *supra* note 1, at 1:50-1:52, 3:01-3:04, and 8:35-9:19.
28 https://www.cnn.com/videos/politics/2023/05/27/smr-no-labels-third-party.cnn

4

to accept Statements of Interest or nominating petitions from Mr. Draper, Mr. Grayson, and any other person who would seek to use No Labels' ballot line in contravention of No Labels' stated intentions and desire."). Upon receiving notice from the Secretary that he has a "nondiscretionary duty to accept candidate filings" pursuant to A.R.S. § 16-311, No Labels brought this suit. (*Id.* at 32).

## LEGAL ARGUMENT

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Mandatory injunctions, like the one sought here, are "particularly disfavored" and should be denied "unless the facts and law clearly favor the moving party." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

Plaintiff also discussed the so-called "sliding scale" or "serious questions" test applied to preliminary injunctions. However, since this is now a consolidated proceeding pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure (DE 11), the "serious questions" test—which requires only that "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor"—is inappropriate. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The serious questions test means that the matter is "ripe for litigation and deserving of more deliberate investigation." *Id.* (*quoting RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 108-09 n.3 (10th Cir. 2009). This Court should not use the serious questions test when evaluating what has become a request for permanent injunctive relief.

No Labels' request for an injunction fails under either legal standard for determining whether injunctive relief is warranted, so this Court should deny Plaintiff's Motion.

I. **Plaintiff Cannot Succeed on the Merits.**

No Labels' claims are at best based on a fundamental misunderstanding of the law, and at worst, intended to circumvent constitutional protections for Arizona voters. Accurately construed, the injunctive request is really an injunction against any and all No Labels candidates not ordained by No Labels, Inc. The assertion that Plaintiff is likely to prevail on the merits is based on an incorrect reading of the statutes, and would turn freedom of association on its head. No Labels' request for an injunction should fail because it cannot succeed on the merits.

**A. The Injunction No Labels Seeks Is Mandatory, Because it Seeks to Prohibit Candidates' Ballot Access.**

While No Labels presents its request as a prohibitory injunction, the relief sought is mandatory in nature, and thus, Plaintiff bears a higher burden. If the Secretary is prohibited from accepting nomination petitions and other papers from No Labels candidates, then candidates up and down the ballot will be barred from running unless they are No Labels, Inc.'s anointed Presidential and Vice Presidential candidates. This relief would enjoin current and potential candidates—parties which Plaintiff has not sued—from achieving ballot access in accordance with Arizona law. *See* (DE 6-1 at 29) (demanding the Secretary refuse candidate paperwork from two identified No Labels candidates and "any other person who would seek to use No Labels' ballot line). However, orders for injunctions must state its terms with specificity and can only bind the parties to the litigation. Fed. R. Civ. P. 65(d).

No Labels seeks a mandatory bar against the candidacies of anyone who is not hand-picked by No Labels, Inc., including candidates who are not parties to the instant suit. There is no basis for this remedy, which would prohibit people from seeking office and voters from supporting those candidates, by pursuing an injunction against the Secretary. No Labels' request for mandatory injunctive relief should be denied. *Garcia*, 786 F.3d at 740 ("Because [plaintiff] seeks a mandatory injunction, she must establish

6

that the law and facts *clearly favor* her position, not simply that she is likely to succeed.").

### B. No Labels' Reading of Key Statutory Provisions Is Fatally Flawed.

No Labels' entire statutory argument rests on a strained reading of A.R.S. § 16-301(A),[4] without recognizing the purpose of the law, and severing it from other relevant statutes and Arizona constitutional provisions governing elections. At a time when many states allowed political parties to use caucuses to select their nominees, Arizona embraced direct election of party nominees by primary vote. Ariz. Const. art. VII, § 10. Since statehood, this provision of the state constitution is enforced by A.R.S. §§ 16-301 and -302.

No Labels selectively emphasizes words to make it appear that the law leaves the process of choosing whether to run candidates to the political party's discretion, but that selective emphasis is legal drafting sleight of hand. Arizona law specifies that:

> At a primary election, each political party entitled and intending to make nominations for the ensuing general or special election, if it desires to have the names of its candidates printed on the official ballot at that general or special election, shall nominate its candidates for all elective, senatorial, congressional, state, judicial, county and precinct offices to be filled at such election except as provided in § 16-344.

A.R.S. § 16-301(A). With No Labels' emphasis removed, it is clear this statute requires a political party which wants to field its candidates on the general election ballot to run those candidates in a direct primary. *Id.* Read in conjunction with the second half of Title 16, Chapter 3, Article 1—which prohibits a candidate of an organized political party from appearing on the ballot if they have not been elected in the primary—

---

[4] Moreover, because Plaintiff has "chosen not to nominate candidates for any office other than President and Vice President," this statute should not matter to the Plaintiffs' argument. Candidates for President and Vice President are not nominated in a primary election, but in the Presidential Preference Election, governed by A.R.S. § 16-241, *et seq.*

1  demonstrates these laws ensure political parties participate in direct primaries, not that
2  the party gets to decide whether a candidate can participate in an election.
3  　　　　The Secretary agrees with the Plaintiff that "if the plain meaning of [a] statute is
4  unambiguous, that meaning is controlling." *Close v. Thomas*, 653 F.3d 970, 974 (9th
5  Cir. 2011). "Of course, statutory language must always be read in its proper context, as
6  courts must look to the design of the statute as a whole and to its object and policy, and
7  the words of a statute must be read in their context, and with a view to their place in the
8  overall statutory scheme." *Calif. v. Trump*, 963 F.3d 926, 944 (9th Cir. 2020) (cleaned
9  up). The statutes in Title 16, Chapter 3, Article 1 effectuate the Arizona constitution's
10 mandate that "[a] direct primary election law . . . shall provide for the nomination of
11 candidates for all elective [offices]." Ariz. Const. Art. 7, § 10. They do not stand for No
12 Label's position, that an out-of-state corporate entity has unfettered discretion to dictate
13 to Arizonans who runs for office, whether as President or precinct committeeperson.
14 　　　　Even if No Labels' tortured reading of A.R.S. § 16-301(A) is correct, it omits the
15 fact that becoming a new party before the PPE pursuant to A.R.S. § 16-801 secures
16 ballot access for their qualified candidates. "A political party that is eligible for the
17 presidential preference election ballot *shall be represented* on the subsequent primary
18 and general election ballots in the year of the presidential election." A.R.S. § 16-
19 244(A)(2). While No Labels opted-out of the PPE, the party was still eligible to
20 participate in it, so ballot access for No Labels qualified candidates is guaranteed.
21 　　　　No Labels' claim that Arizona law allows it to dictate the requirements for
22 candidates is incorrect, and its request for an injunction should be denied.

23 　　　　**C. No Labels' Associational Rights Are Not Violated by Individuals
24 　　　　　　who Have Joined the No Labels Party Competing in a Primary
　　　　　　　Election as No Labels Candidates.**

25 　　　　Political parties have associational rights. They may limit who can choose their
26 nominee to registered party members. *Calif. v. Jones*, 530 U.S. 567, 575 (2000). But
27 freedom of association ends where the fundamental political rights of others begin.
28

8

Could the Secretary be enjoined from taking *any* candidate filings in the crowded Republican-party primary for Congressional District 8 or a similarly-crowded Democratic-party primary in Pima County? Of course not, because the right to vote is fundamental, and preservative of all rights. *E.g.*, *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 667 (1966). Likewise, this Court should not enjoin the Secretary from taking nomination paperwork from No Labels candidates who are running without the blessing of No Labels, Inc.

### 1. The State Has a Significant Interest in Ensuring Fair and Orderly Elections that Overrides No Labels' Nomination-By-Fiat Preference.

A political party's rights are properly circumscribed by its role in our democracy. People have asserted the right of association in furtherance of some truly abominable ideas. For example, *Smith v. Allwright*, charts the state of Texas' repeated attempts to block Black voters from participating in primary elections. 321 U.S. 649 (1944). No Labels, Inc., has not yet publicly named its candidates. But the assertion that No Labels, Inc. alone can determine who can be a candidate while it is acting as a political party empowered by the State with specific benefits sets the same dangerous precedent as that rejected in *Allwright*.

Additionally, none of the cases cited by No Labels support its unfettered vision of political party associational freedom. By splicing quotes and cherry-picking citations, No Labels asserts that a political party's "decision to accept or reject state 'circumscription' and its attendant consequences is, by its nature, entirely private and internal to the party and cannot be overridden.'" (DE 6 at 10). The incredible overbreadth of that statement is a dead giveaway that this argument is not true.

The rules governing ballot access and freedom of association have been well-settled for decades. Political parties have the opportunity to exercise their freedom of association by determining who chooses their nominee for the general election. *Jones*, 530 U.S. at 575. However, that does not give them unfettered discretion to determine

9

who can run, or how. *Ariz. Libertarian Party v. Hobbs*, 925 F.3d 1085, 1092 (9th Cir. 2019) ("A political party cannot manipulate its internal preferences and processes to transform a constitutional statute into an unconstitutional one."); *Alaskan Independence Party v. Alaska*, 545 F.3d 1173, 1177 (9th Cir. 2008) ("*AIP*"). When the burden on association is reasonable and nondiscriminatory, the State's important interests are generally sufficient to justify restrictions on the right to associate. *Burdick v. Takushi*, 504 U.S. 428, 434-35 (1992). Contrary to No Labels' suggestion, the United States Supreme Court has upheld significant restrictions on a political party's freedom of association when they are supported by important state interests. *See Storer v. Brown*, 415 U.S. 724, 733 (upholding candidate disqualification if that candidate had been a member of another party within the last year).

Arizona law does not violate No Labels' freedom of association by allowing citizens affiliated with the No Labels party to run as a candidate. In *AIP*, a third party sought a declaratory judgment that the political party had the sole right to determine how its candidates were chosen. 545 F.3d at 1176. But courts have long held that states have a compelling interest in "eliminating the fraud and corruption that frequently accompanied party-run nominating conventions" that withstands even strict scrutiny. *Id.* at 1180. The issues and relief sought by No Labels in this suit are nearly indistinguishable from those at issue in *AIP*, in which the court easily found against the political party because "the state's goals would clearly be impeded if party leaders could either opt out of the primary altogether or interfere with the democratic process by exercising veto power over the candidates that might seek nomination." *Id.* at 1177.

Under the flexible standard used to reconcile the tension between the freedom of association and the state's interest in regulating elections, No Labels' quest to restrict the rights of candidates and voters. Indisputably, No Labels has benefitted by its status a political party. For example, No Labels has ensured a much easier avenue for ballot access for its presidential slate in the 2024 General Election than unaffiliated candidates

face. As a new political party, No Labels' ballot access, and their voters' right to vote for qualified No Labels candidates in Arizona's 2024 primary election, is secure. No Labels' associational rights are also protected under this system. For example, the party's presidential and vice presidential candidates can be chosen pursuant to its bylaws. A.R.S. § 16-243(A). Another benefit secured by No Labels as a political party is that does not need to compete for signatures during a crowded and expensive 2024 election cycle, because it secured party status in March of 2023. If No Labels were not a recognized party, it would have had to collect more signatures, and its presidential candidate would have had to file nomination paperwork with the Secretary before nomination signatures could be collected. A.R.S. § 16-341. Given that No Labels, Inc. has not yet publicly identified a presidential candidate, party status confers a distinct advantage upon No Labels.

The Ninth Circuit and the United States Supreme Court have upheld primary laws like Arizona's as not infringing on political party associational rights. *AIP*, 545 F.3d at 1180; *see also Jones*, 530 U.S. at 575 (distinguishing unconstitutional blanket primary from a closed primary). Plaintiff's requested relief would up-end the legislative balance that ensures an opportunity to participate in the political process for all. Such a precious right cannot be unilaterally usurped by corporate bylaws; the right to associate does not flow only from the party boss down to the voter, but also flows from the voters to party leadership and the candidates. No Labels' request for an injunction should be denied.

**2. No Labels Chose to Become a Political Party Instead of Fielding an Exclusively "No Labels" Presidential and Vice Presidential Candidate.**

No Labels asserts that "No Labels Arizona would object if the Arizona equivalent of Mother Teresa were to file a statement of interest," to demonstrate its resolute objection to associating with any candidate other than its hand-picked choice. (DE 6 at 4). Of course, No Labels could have achieved its stated objective by availing itself of Arizona's procedure for unaffiliated candidates to run for election, with "up to three

words" describing their affiliation. A.R.S. § 16-341. This would have allowed No Labels, Inc. to field a presidential and vice presidential candidate under the "No Labels" banner without sharing that identity with anyone else. A.R.S. § 16-341(D), (G); *Bd. of Supervisors v. Harrington*, 85 Ariz. 163, 168 (1958) (holding that candidates could not avoid the Republican primary, then run as an unaffiliated candidate with the "Republican" label). However, this would have sacrificed many benefits associated with political party status.

Instead, No Labels, Inc. chose to create a political party, and now seeks to clear the field of anyone that it and its Arizona subsidiary do not specifically endorse. This is not how political parties function. *See Colo. Republican Fed. Campaign Comm. v. Fed. Election Comm'n*, 518 U.S. 604, 615-16, 618 (1996) (explaining the "important and legitimate role for political parties in American elections" which "seeks to convince others to join those members in a practical democratic task, the task of creating a government that voters can instruct and hold responsible . . ."). Political parties are an "organization of voters formed to influence the government's conduct and policies by nominating and electing candidates to public office." Black's Law Dictionary (11th ed. 2019) (defining "political party").[5] As No Labels admitted in previous litigation defending its position as a political party, "persons signing a petition to a (*sic*) create a new party intend to constitute the party they are helping create. This is the reading the Court should adopt . . . " (Ex. 5, No Labels Mot. to Dismiss, CV2023-004832 at 9).

No Labels, Inc. had the right to choose to either: 1) run an unaffiliated candidate, identified as the "No Labels" candidate without sharing that political identity with any other candidates for any other office; or 2) to create a new political party that ensured their candidates a spot on the ballot, but left open the possibility that the people who

---

[5] The definition of "political party" in A.R.S. 16-901(42) is a definition that is only useful in the campaign finance context. *Id.* ("'Political party' means a committee that meets the requirement for recognition as a political party pursuant to chapter 5 of this title.").

helped them achieve party status may also seek to be candidates representing their party and desire to vote in a No Labels Primary Election in 2024. No Labels chose to avail itself of the benefits of political party status, including a later nomination date and a lower qualifying threshold. For example, an unaffiliated "No Labels" candidate would need to gather at least ten thousand more signatures to achieve ballot access than No Labels the political party did. *Compare* A.R.S. § 16-801(A) (requiring petitions signed by 1 1/3% of total votes cast for governor in most recent gubernatorial election) *with* A.R.S. § 16-341(E) (requiring petitions signed by 3% of all non-affiliated voters to achieve ballot access). And that unaffiliated candidate can only begin collecting signatures for ballot access after the candidate has announced. A.R.S. § 16-341(G).

In short, Arizona law provided No Labels, Inc. alternative routes to ballot access, including one that would provide exactly the outcome No Labels purports to seek through this action, but it chose the other route—to become a political party. No Labels cannot now shield itself and enjoin others from all that being a political party entails. Pursuant to Arizona law, as a new party, No Labels *shall* have the opportunity to be represented on the primary and general election ballots in 2024. A.R.S. § 16-244(A)(2). For these reasons, No Labels' request for an injunction should be denied.

## II. Plaintiff Will Not Suffer Irreparable Harm.

Plaintiff claims it will suffer irreparable harm because a constitutional violation "constitutes irreparable injury." (DE 6 at 11). It is a circular argument that assumes No Labels succeeds on the merits, in essence merging likelihood of success on the merits and irreparable harm. No Labels is unlikely to succeed on the merits, but even if successful, it is so difficult to articulate an actual *harm* that their requested injunction would prevent, No Labels does not even try. (*Id.*)

No Labels will not suffer harm absent an injunction, but candidates and voters would. If Plaintiff prevails, No Labels voters will have no option to vote for federal, statewide, or legislative candidates in the 2024 Primary Election because they are only

eligible to vote in their own party's primary. A.R.S. § 16-467. Similarly, a candidate running for office as a member of a party must be registered with that party under Arizona law. A.R.S. § 16-311(A). And by its own admission, No Labels would object to even "ideal candidates" or the "Arizona equivalent of Mother Teresa" as No Labels candidates. (DE 6 at 4). While the leaders of No Labels, Inc. disavow party status,[6] it is indeed a political party in Arizona. As a political party, No Labels cannot show that it suffers irreparable harm because No Labels members want to participate as candidates. However, voters and candidates would certainly suffer irreparable harm should No Labels prevail here.

### III.  The Balance of Equities and Public Interest Favors the Secretary.

The balance of equities and public interest merge when the State is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The public interest at issue here was repeatedly re-affirmed during Arizona's decades-long struggle for statehood, resulting in a constitutional mandate that nominees of political parties be chosen by direct primary. Ariz. Const. art. VII, § 10. Concerning this constitutional provision, the leading treatise on Arizona's constitution wrote: "This section's requirement of a direct primary to select candidates for all elective offices was a distinctly progressive innovation in 1910, recognizing that general elections could be made meaningless if political machines hand-picked the candidates." JOHN D. LESHY, THE ARIZ. STATE CONST. 239 (Oxford 2nd ed. 2013). No Labels is just the sort of political machine that the framers of the Arizona constitution faced and took pains to prevent re-asserting control of Arizona's government.

No Labels seeks to bar anyone from running because it is a corporate subsidiary, uninterested in being a true political party. The Chair of the No Labels Party of Arizona knows that her party is "a state-level affiliate of No Labels, Inc.," but appears to have no direct, personal knowledge of much else about No Labels, Inc., having instead only an

---

[6] NBC Interview, *supra* note 1.

"understand[ing that it] is a 501(c)(4) nonprofit headquartered in Washington, D.C.," and has been "informed" about various alleged activities of No Labels, Inc. (DE 6-1 at 2-3, ¶¶ 3-4). While she is clear that No Labels AZ's role is to do the bidding of No Labels, Inc. in supporting the corporate nominees, those persons are *still unidentified*. (*Id.* at ¶ 4). In other words, the state party chair has sworn the party's allegiance to unknown candidates that will be chosen by No Labels, Inc.

No Labels pushes an absolutist freedom of association right beyond the bounds of reason. The initial members of the No Labels Arizona state committee "have been appointed by No Labels, Inc." (DE 6-1 at 7). No Labels state committee members are directly beholden, not to voters committed to the same purpose, but No Labels, Inc. (*Id.* at 11, ¶ 2.b.). Each of the three state committee members, who were appointed by No Labels, Inc., "serves a term that lasts until the Committee member dies, resigns, becomes ineligible, or is removed by No Labels." (*Id.* at 12, ¶ 4.b.ii.) Likewise, the officers of No Labels serve for life or until No Labels, Inc. chooses to unseat them. (*Id.* at ¶ 4.c.i). Action may be taken by the state committee at a properly-noticed meeting—or outside of any meeting—at the sole discretion of a majority of the three life-term No Labels, Inc. appointees. (*Id.* at 13, ¶ 4.d.-e.). The Constitution and Bylaws of this so-called political party can be "amended or repealed by a majority of the Committee or by a majority of [the party's] Members at a Convention of Membership," but *only* "upon the written consent of No Labels*.*" (*Id.* at 15, ¶ 8). No Labels, Inc. has directed its state political party to further limit party structure and voter-involvement by not seating any legislative district leadership. (*Id.* at 11, ¶ 2.c). Finally, it is not the No Labels state party organizations that nominate candidates for President and Vice President; the candidates are chosen by No Labels, Inc. and rubber-stamped by the state parties. (*Id.* at 14, ¶ 6).

The No Labels political party's constitution and by-laws makes it clear that it seeks to elevate its own First Amendment rights over all others—via the electoral mechanism of the state—all to the detriment of the very people it relied upon to ensure a

direct route to the 2024 General Election ballot. As of October 2023, there are 18,799 voters registered with the No Labels party in Arizona. (Ex. 4). This is quite remarkable, as even a year ago No Labels did not exist. By way of comparison, there are 33,713 voters registered with the Libertarian party as of the same date, and it has been recognized as a political party in Arizona for decades. *Id.* And the Green Party, which perennially achieves "new party" status, had just 6,463 registered voters in Arizona the last time it had candidates on the ballot in 2018. (Ex. 6, Ariz. Voter Registration Rep. (Nov. 6, 2018)).

In determining the balance of equities and the public interest, this Court is directed to weigh not just the interests of the parties, but the nearly 19,000 voters who left their prior affiliation to join cause with No Labels as a political party. This Court should also compare the principles that animate the direct primary law, with the secrecy and top-down control with which No Labels is attempting to wield power. Considering all the benefits No Labels has received by becoming a political party, including a later deadline to publicly identify a nominee, along with the fact that there was an alternative route for No Labels to get the exact relief they seek here, the balance of equities and public interest tip sharply in favor of the Secretary. For these reasons, Plaintiff's request for an injunction barring the Secretary from allowing qualified candidates to stand for election, and thus disenfranchising No Labels primary voters, should be denied.

## CONCLUSION

No Labels has not met the heavy burden required to entitle it to an injunction, and its request for relief should be denied. No Labels cannot be treated as both a serious political party that fields hand-picked candidates for select offices, and an out-of-state corporate body which can block ballot access for all others. Our elections are not a "game." No Labels' request for an injunction should be denied.

//

//

Respectfully submitted this 20th day of November, 2023.

        Kristin K. Mayes
        Attorney General

        */s/ Kara Karlson*
        Kara Karlson
        Karen J. Hartman-Tellez
        Senior Litigation Counsel
        Kyle Cummings
        Assistant Attorney General
        *Attorney for Defendant Arizona Secretary of State Adrian Fontes*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of November, 2023 I filed the forgoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing

/s/Monica Quinonez