David B. Rosenbaum, No. 009819
Andrew G. Pappas, No. 034432
Emma J. Cone-Roddy, No. 034285
Brandon T. Delgado, No. 035924
OSBORN MALEDON, P.A.
2929 North Central Avenue, 20th Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
apappas@omlaw.com
econe-roddy@omlaw.com
bdelgado@omlaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The No Labels Party of Arizona,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>Adrian Fontes,<br><br>　　　　　　　Defendant. | No. 2:23-cv-02172-JJT<br><br>**NO LABELS ARIZONA'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION** |

The Secretary of State resists No Labels Arizona's motion for a preliminary injunction by ducking the relevant question: whether the Secretary can force No Labels Arizona to participate in elections the party wants nothing to do with. Instead, the Secretary focuses on authorities requiring a party to participate in a primary election *after* a party already has chosen to run a candidate for a public office that is subject to a primary election. Those authorities are inapposite here. No Labels Arizona does not challenge the validity of Arizona's primary election law. If No Labels Arizona wanted to nominate a candidate for U.S. Senator or Arizona Corporation Commissioner to appear with its insignia on the general election ballot in Arizona, it would, of course, need to follow the State's primary election rules to secure that privilege. That is not what this case is about.

This case involves No Labels Arizona's right under Arizona's election laws, as well as the First and Fourteenth Amendments, to sit out elections for offices that the party has decided to skip. A political party enjoys the right to determine the boundaries of its association and the structure that best allows it to pursue its associational goals. For No Labels Arizona, those boundaries and goals center on the offices of President and Vice President. The Secretary cannot second-guess No Labels Arizona's deliberate decision not to participate in elections for other offices, including elections for U.S. Senator and Arizona Corporation Commissioner.

The Secretary does not meaningfully rebut this argument. An injunction is necessary because No Labels Arizona is likely to succeed on the merits, it would suffer irreparable harm if the Secretary were not enjoined, the balance of equities falls heavily in No Labels Arizona's favor, and the public interest demands solicitude for statutory and constitutional rights. But before No Labels Arizona addresses the merits of the proposed injunction, it must first address the Secretary's arguments about the legal standards.

I.   **LEGAL STANDARDS.**

  A.   **Standards for issuing a preliminary and permanent injunction.**

No Labels Arizona's preliminary injunction motion is now consolidated with a trial on the merits, set for January 5, 2024. Doc. 12. Because the matters have been

1

consolidated, the Secretary argues that the Court should apply just the standard for a permanent injunction. Doc. 16 at 6.[1]

No Labels Arizona has requested both forms of relief. Doc. 6; Doc. 1 at 11. Which standard applies may depend on how the Court proceeds. The Court may make a consolidated ruling before the primary election that addresses the merits and No Labels Arizona's request for a permanent injunction—thereby mooting the request for a preliminary injunction. Or the Court may want to provide preliminary injunctive relief while it takes the matter under advisement to issue a final decision. *See* Fed. R. Civ. P. 65 advisory comm.'s note to 1966 amend. (noting that "consolidat[ion] should cause no delay in the disposition of the application for the preliminary injunction" and that a "preliminary injunction, if justified by the proof, may be issued in the course of the consolidated proceedings").

However the Court proceeds, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987). For both requests, the moving party must establish a likelihood of irreparable harm, that the balance of equities tip in its favor, and that an injunction is in the public interest. *Id.*; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (setting forth test for preliminary injunction). The only difference is a practical one. Obviously, if the Court issues a permanent injunction after a trial on the merits, the Court must find "actual success" on the merits, as opposed to a "likelihood of success" or serious questions going to the merits. *Amoco Prod. Co.*, 480 U.S. at 546 n.12.

**B.**     **The proposed injunction is not a mandatory injunction.**

The Secretary also contends that No Labels Arizona is seeking a mandatory injunction and therefore bears a higher burden of success on the merits. Doc. 16 at 7. The Secretary specifically argues that No Labels Arizona must establish that "the law and facts *clearly favor* [its] position, not simply that [it] is likely to succeed." *Garcia v.*

---

[1]     No Labels Arizona cites the Secretary's response using the ECF page number at the top right of the page.

2

*Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). But this standard does not apply here because No Labels Arizona seeks only a *prohibitory* injunction, not a mandatory one.

In deciding which standard applies, a court's "first task is to determine whether [the moving party] requested a prohibitory injunction or a mandatory injunction." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994). A mandatory injunction requires a person to "take affirmative action." *Garcia*, 786 F.3d at 740. It "goes well beyond simply maintaining the status quo *pendente lite*." *Stanley*, 13 F.3d at 1320 (citation omitted). A prohibitory injunction "prohibits a party from taking action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009).

Ignoring this distinction, the Secretary claims that the requested injunction is mandatory. Doc. 16 at 7. Yet he does not point to a provision in the proposed injunction that requires anyone to take action—because none exists. *Id.*; Doc. 6-4 at 3 (seeking only to "ENJOIN[]" the Secretary from taking certain actions). In fact, the Secretary acknowledges that the injunction only *prohibits* action. Doc. 16 at 7. The injunction therefore is a prohibitory injunction, and the "clearly favor" standard does not apply.

II.     **ARGUMENT.**

   A.     **No Labels Arizona is likely to succeed on the merits.**

      1.     **The proposed injunction complies with Rule 65.**

The Secretary invokes Federal Rule of Civil Procedure 65(d), asserting that the Court should deny the proposed injunction because it seeks to bind non-parties to the suit (e.g., a person's ability to run as a No Labels candidate). Doc. 16 at 7.

The proposed injunction, however, seeks to bind only the Secretary and his agents. Doc. 6-4 at 3 ("the Secretary, in his official capacity, and his officers, agents, servants, [and] employees"); Fed. R. Civ. P. 65(d) (allowing an injunction to bind the party and its "officers, agents, servants, employees, and attorneys"). Although the injunction may *affect* non-parties, "there is 'no general requirement that an injunction affect only the parties in the suit.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (citation omitted). The proposed injunction binds only the Secretary, though it may

3

affect other non-parties, such as persons seeking to run as No Labels Arizona candidates.

### 2. Count I: Violation of A.R.S. § 16-301(A).

In its Motion, No Labels Arizona explained why A.R.S. § 16-301(A) is plain and unambiguous. Doc. 6 at 5–8. Under the statute, *if* a party "intend[s]" to make a nomination for certain public offices, and "*if* [the party] desires to have the names of its candidates printed on the official ballot at that general or special election," then it must nominate its candidates for those offices through a primary election. A.R.S. § 16-301(A) (emphasis added). The Secretary says that No Labels Arizona "selectively emphasizes words" in the statute, but the Secretary never meaningfully engages with the statutory text or explains an alternative meaning for a clear contingent phrase like, "if it [*i.e.*, the party] desires." Doc. 16 at 8. The Secretary acknowledges, as he must, that section 16-301(A) only "requires a political party which *wants* to field its candidates on the general election ballot to run those candidates in a direct primary." Doc. 16 at 8 (emphasis added). That is true. But No Labels Arizona does not "intend[]" or "desire[]" or "want[]" to nominate candidates for offices other than President and Vice President to appear on the general election ballot. No Labels Arizona cannot be required to do so under section 16-301.

Perhaps to avoid this clear statutory text, the Secretary argues in a footnote that section 16-301 "should not matter to [No Labels Arizona's] argument," because the party wants to nominate candidates only for President and Vice President, and different statutes govern the Presidential Preference Election. Doc. 16 at 8 n.4. The Secretary misses the point. As the Secretary acknowledges, *id.* at 8, section 16-301 governs the process by which political parties that want to nominate candidates for "all elective, senatorial, congressional, state, judicial, county and precinct offices" may do so. This whole case is about whether No Labels Arizona can be forced to participate in elections it wants no part of. Section 16-301 therefore matters a great deal to No Labels Arizona's argument, and it is fatal to the Secretary's position.

The Secretary nonetheless insists he can force No Labels Arizona to participate in elections for these other offices. But none of the other provisions the Secretary cites

4

supports his position. The Secretary first cites article VII, section 10 of the Arizona Constitution, Doc. 16 at 8–9, which provides that the legislature "shall enact a direct primary election law, which shall provide for the nomination of candidates for all elective State, county, and city offices." Ariz. Const. art. VII, § 10. This provision merely requires general election nominees for these offices to be selected via primary election. It does not require a party, against its wishes, to run a candidate for all offices up and down the ballot.

Next, the Secretary says that A.R.S. § 16-302 "ensure[s] political parties participate in direct primaries." Doc. 16 at 8–9. It does not. The statute actually envisions that a party often will *not* participate in elections for every office, dictating that "[i]f no candidate is nominated in the primary election for a particular office, then no candidate for that party may appear on the general or special election ballot." A.R.S. § 16-302. As No Labels Arizona argued in its Motion, a political party (like No Labels Arizona) that decides not to participate in one or more primary elections for the offices covered by the statute must live with the consequences of A.R.S. § 16-302—that is, its candidates for those offices will not appear on the general or special election ballot. Doc. 6 at 6.

The Secretary also cites A.R.S. § 16-244(A)(2), which provides that a party is "eligible to participate in the presidential preference election" if it satisfies A.R.S. § 16-801. Doc. 16 at 9. But this case is not about the presidential preference election. No Labels Arizona *opted out* of the presidential preference election, which it undisputedly had a right to do. *See* Ariz. Sec'y of State, *Elections Procedures Manual* at 124 (2019); 2019 Ariz. Sess. Laws, Ch. 267, § 19. The Secretary nevertheless suggests that a provision about a presidential preference election that *even he* agrees is optional can somehow be deployed to coerce a party's participation in primary elections for other offices. The Secretary is mistaken. Section 16-244 was enacted to *permit* a newly recognized party to participate in the presidential preference election, not to *compel* it to participate in other elections that it had affirmatively decided to sit out entirely.

For these reasons, the Secretary would violate Arizona law if he were allowed to

5

compel No Labels Arizona to nominate a candidate in an election in which the party expressly desires not to participate. No Labels Arizona is likely to succeed on Count One.

### 3. Count Two: First and Fourteenth Amendment via Section 1983.

No Labels Arizona's Motion explained that a political party's "determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals, is protected by the Constitution." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 224 (1986). A political party's autonomy related to the selection of nominees is even afforded "special protection." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000). And a state may not substitute its own judgment for that of the party in determining "the structure which best allows it to pursue its political goals." *Tashjian*, 479 U.S. at 224. The Secretary does not dispute these well-established principles, which No Labels Arizona relied upon when it determined that the boundaries of its association would be limited to potentially nominating a President and a Vice President.

Courts repeatedly recognize these bedrock party associational rights, yet the Secretary asserts the novel theory that a political party's "freedom of association ends where the fundamental political rights of others begin." Doc. 16 at 9. This notion—that party associational rights are secondary to all others' rights—finds no support in case law.[2] To the contrary, party associational rights in this context are "at the very heart" of the First Amendment. *Cousins v. Wigoda*, 419 U.S. 477, 491 (1975) (Rehnquist, J. concurring in the result). And even if No Labels Arizona's freedom of association did somehow "end[] where the fundamental political rights of others begin," Doc. 16 at 9, no one has a fundamental political right to appear on the ballot as a party's nominee.

---

[2] The Secretary asks rhetorically, "Could the Secretary be enjoined from taking *any* candidate filings in the crowded Republican-party primary for Congressional District 8 or a similarly-crowded Democratic-party primary in Pima County? Of course not, because the right to vote is fundamental, and preservative of all rights." Doc. 16 at 10. But the Republican and Democratic parties in the Secretary's hypothetical situation presumably would have chosen to place candidates for those offices on the general election ballot. No Labels Arizona has made no such similar choice to participate in elections for those offices.

6

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997) (noting that even a political party is not constitutionally "entitled to have its nominee appear on the ballot as that party's candidate").

The Secretary then pivots to the idea that a "political party's rights are properly circumscribed by its role in our democracy." Doc. 16 at 10. But no such nebulous "role in our democracy" standard exists. The decision to form a political party does not mean the party loses its constitutional rights or surrenders its autonomy so that its internal decision-making and controls become "wholly public affairs that States may regulate freely." *Jones*, 530 U.S. at 572–73. The Secretary, of course, eventually retreats from his categorical rejection of party associational rights to acknowledge that parties may "exercise their freedom of association by determining who chooses their nominee for the general election." Doc. 16 at 10. But he does so without recognizing that those same associational freedoms safeguard party autonomy over an upstream decision that is altogether more fundamental: a party's choice whether to put forward a nomination for a public office at all. A political party's associational rights may be "circumscribed" in the first place *only* if it chooses to avail itself of "the right to have [its] candidates appear with party endorsement on the general-election ballot." *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 203 (2008).

None of the cases cited by the Secretary supports his view that he can force No Labels Arizona to participate in an election over the party's objection. The Secretary cites *Smith v. Allwright*, 321 U.S. 649 (1944), for the proposition that the State has an interest in ensuring fair elections. Doc. 16 at 10. True, but irrelevant. *Allwright* concerned a party's racial discrimination in "limiting participation in its primary to whites." *Jones*, 530 U.S. at 573. Because the party in that case participated in Texas' election process to nominate candidates to appear on the general election ballot, its "discriminatory action bec[ame] state action under the Fifteenth Amendment." *Id.* No question, if No Labels Arizona were to participate in Arizona's direct primary election, it would be bound to follow every constitutional command. But that says nothing about

1 whether the Secretary can *force* No Labels Arizona to participate in an election against
2 its will and in violation of *its* constitutional rights.

3 The Secretary also cites *Alaskan Independence Party v. Alaska*, 545 F.3d 1173,
4 1177 (9th Cir. 2008). Doc. 16 at 11–12. That case involved political parties that wanted
5 their candidates' names to appear on Alaska's general election ballot but nonetheless
6 sought to overturn Alaska's primary election law because they wanted "to exclude from
7 the ballot those candidates the party finds objectionable" and sought to force Alaska to
8 accept nominees who were not selected via primary election. *Alaskan Indep. Party*, 545
9 F.3d at 1175–77. The case "at its core" was "an attack on the mandatory direct primary
10 itself." *Id.* at 1177.

11 The Secretary claims that No Labels Arizona seeks the same relief as the plaintiffs
12 in *Alaskan Independence Party*. Doc. 16 at 11. Not so. No Labels Arizona does not seek
13 to challenge the validity of Arizona's direct primary, exclude any candidate based on an
14 ideological objection, or require the Secretary to print on a general election ballot the
15 names of any down-ballot nominees who bypassed the direct primary. No Labels Arizona
16 acknowledges that *if* it or any other party wanted to nominate candidates for any offices
17 to appear with party insignia on the general election ballot, the State could require the
18 party to nominate the candidates through primary elections according to State-prescribed
19 procedures. But, unlike the plaintiffs in *Alaskan Independence Party,* No Labels Arizona
20 does not want that. No Labels Arizona is not (as the Secretary claims) seeking to select
21 candidates "[b]y-[f]iat." Doc. 16 at 10. It seeks only to enjoin the Secretary from forcing
22 it—by fiat—to participate in certain elections.

23 The Secretary also suggests that No Labels Arizona should have forgone party
24 status and instead asked a future unidentified and unaffiliated candidate to list "No
25 Labels" as his or her political preference, which the Secretary says would have allowed
26 the party to "field a presidential and vice presidential candidate . . . without sharing that
27 identity with anyone else." Doc. 16 at 12–14. The Secretary fundamentally
28 misunderstands party associational rights. An unaffiliated candidate's statement of *his or*

8

*her* political preference is not the equivalent of a party nominating *its* choice, given that a candidate's party-preference designation does not "mean that the candidate is the party's chosen nominee or representative." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 454 (2008). The Secretary's supposed "alternative" is really no alternative at all because "[t]here is simply no substitute for a party's selecting its own candidates." *Jones*, 530 U.S. at 581 (2000). The Secretary insists that No Labels Arizona is afforded only a binary choice: *either* participate in all elections as the price for nominating candidates in one election *or* forfeit the nomination of candidates altogether. Neither Arizona law nor the First Amendment allows the State to impose such an all-or-nothing restriction. In short, No Labels Arizona is likely to succeed on Count Two.

**B. No Labels Arizona is likely to suffer irreparable harm.**

The Secretary does not dispute that a "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burn*, 427 U.S. 347, 373 (1976). He also does not dispute that "once the election occurs, there can be no do-over and no redress." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). Rather, the Secretary argues that the fact that a constitutional injury constitutes irreparable harm is a "circular" principle, and that it is "difficult to articulate an actual *harm* that their requested injunction would prevent." Doc. 16 at 14.

The fact is, a constitutional injury is irreparable harm, and as already demonstrated above, No Labels Arizona would suffer such an injury. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (citation omitted)) (*Melendres I*). No Labels Arizona also will suffer irreparable harm if the Secretary is not enjoined from violating A.R.S. § 16-301, because there can be no redress following the election.

As for the Secretary's allegations of irreparable harm to the voters and candidates, Doc. 16 at 14–15, they are not only wrong (*see* Argument § II.C.), but they are also irrelevant to whether No Labels Arizona would suffer irreparable harm. *See Winter*, 555

9

U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish that . . . *he* is likely to suffer irreparable harm in the absence of preliminary relief." (emphasis added)).

### C. The equities tip in favor of No Labels Arizona.

"[C]ourts must balance the competing claims of injury and must consider the effect on each *party* of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (emphasis added) (citation and internal quotation marks omitted). The Secretary does not claim that he, as the party to the suit, will suffer any injury. *See* Doc. 16 at 15–17.

Instead, in the guise of discussing the equities, the Secretary launches *ad hominem* attacks on No Labels Arizona's national affiliation and offers a litany of critiques of No Labels Arizona's party structure. Doc. 16 at 15–17. What any of this has to do with the balance of the equities is unclear. But what the Secretary's critiques underscore (yet again) is that he misunderstands his role, which is not to superintend No Labels Arizona's structure or to second-guess its internal choices. The First and Fourteenth Amendments guarantee No Labels Arizona's rights to make those choices for itself.

The Secretary also claims that, when the government is involved, the Court must weigh the interests of the voters and the public because the public interest factor merges with the balancing of equities. Doc. 16 at 15–17. This rule, however, only applies to the "issuance of a stay," not an injunction. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (noting the two are not "one and the same").

Regardless, if the Court were to weigh the interests of the voters, the balance of the equites would still tip in No Labels Arizona's favor. The Secretary asserts that the public has an interest in maintaining primary elections and preventing a party from hand-picking candidates. Doc. 16 at 15–17. But No Labels Arizona's requested relief does not implicate theses interests because No Labels Arizona does not challenge Arizona primary election procedures. It does not want to hand-pick *any* candidates for the elections and offices at issue. Thus, there is no burden on the interests advanced by the Secretary.

Further, the individuals who have sought to run for U.S. Senate and Corporation Commission on a non-existent No Labels Arizona ballot line are still free to run as

independents or in the primary of any party that has chosen to compete in the election for those offices. *See, e.g., Belluso v. Poythress*, 485 F. Supp. 904, 912 (N.D. Ga. 1980) (noting the candidate could seek office "independently or as the candidate of [another] political party"). And the voters could still support those individuals. *Duke v. Massey*, 87 F.3d at 1226, 1234 (11th Cir. 1996) ("Duke's supporters were not foreclosed from supporting him as an independent candidate, or as a third-party candidate"). Accordingly, there is a minimal burden, if any, on voters and candidates.

No Labels Arizona, however, would suffer a heavy burden. Doc. 6 at 12–13; *Jones*, 530 U.S. at 581–82 ("We can think of no heavier burden on a political party's associational freedom" than "forced association"); *Libertarian Party of Ill. v. Scholz*, 872 F.3d 518, 524–25 (7th Cir. 2017) (recognizing a "minor" political party's First Amendment rights are "severely burden[ed]" when a state "forces" it to run "candidates for races [it] want[s] nothing to do with"). The only purpose underlying No Labels Arizona's existence at this point—to focus solely on the offices of President and Vice President—would be completely undermined if it had to field candidates for other offices. The equites tip in favor of No Labels Arizona.

**C. No Labels Arizona's proposed injunction is in the public interest.**

The Secretary does not dispute that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres I*, 695 F.3d at 1002 (citation omitted); *accord Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). He also does not dispute that compliance with a statute is in the public interest. *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011). Because Secretary Fontes' actions violate both A.R.S. § 16-301(A) and the U.S. Constitution, an injunction enjoining the Secretary's actions is in the public interest.

///
///
///
///

11

## V. CONCLUSION.

For the foregoing reasons, the Court should grant No Labels Arizona's requests both for a preliminary and permanent injunction.

DATED this 18th day of December, 2023.

                                    OSBORN MALEDON, P.A.

                                    By    /s/ David B. Rosenbaum
                                              David B. Rosenbaum
                                              Andrew G. Pappas
                                              Emma J. Cone-Roddy
                                              Brandon T. Delgado
                                              2929 North Central Avenue, 20th Floor
                                              Phoenix, Arizona 85012-2793

                                              Attorneys for Plaintiff