**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| No Labels Party of Arizona, | No. CV-23-02172-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Adrian Fontes, | |
| Defendant. | |

At issue is Plaintiff The No Labels Party of Arizona's Motion for Preliminary Injunction (Doc. 6, Mot.), to which Defendant Adrian Fontes, in his official capacity as Secretary of State of Arizona, filed a Response (Doc. 16, Resp.) and Plaintiff filed a Reply (Doc. 18, Reply). The Court held a hearing on the Motion on January 5, 2024. (Doc. 20; 01/05/24 Hr'g Tr.)

**I.    BACKGROUND**

Plaintiff The No Labels Party of Arizona ("No Labels Arizona" or the "Party") "is a state-level affiliate of No Labels, Inc.," a 501(c)(4) nonprofit organization headquartered in Washington, D.C. (Doc. 6-1, Wachtel Decl. ¶ 3; Ex. A, No Labels Arizona Constitution and Bylaws ("Const. & Bylaws") ¶ 2(a).) On February 10, 2023, No Labels, Inc. filed a petition for political party recognition with Defendant Secretary of State Adrian Fontes (the "Secretary"), and on March 7, 2023, the Secretary informed No Labels, Inc. that it "qualifies as a new party for federal, statewide, and legislative races in the 2024 Primary and General Elections under Arizona law." (Doc. 16-1, Karlson Decl. Ex. 2.)

1    Arizonans began registering as members of No Labels Arizona in as early as April

2    2023. (Karlson Decl. Ex. 4.) On June 2, 2023, No Labels, Inc., by way of its legal counsel,

3    informed the Secretary that the Party "will nominate a Presidential ticket as provided in

4    [A.R.S.] § 16-344, but it does *not* desire to have the names of any other candidates printed

5    on the official ballot at the 2024 general election and will therefore not hold a primary

6    election for any office." (Wachtel Decl. Ex. B at 4 (internal quotations omitted).)[1] Either

7    unaware or in disregard of the Party's intention not to permit its registered members to run

8    for office in Arizona under the No Labels Party insignia, on July 21, 2023, registered Party

9    member Tyson Draper filed a Statement of Interest with the Secretary to run as a candidate

10   for the United States Senate, seeking the nomination of No Labels Arizona in the 2024

11   Primary Election. (Doc. 19-1, Joint Stip. Ex. 9.) Likewise, on August 6, 2023, registered

12   Party member Richard Grayson filed a Statement of Interest with the Secretary to run for

13   the office of Arizona Corporation Commissioner. (Joint Stip. Ex. 10.)

14   On August 11, 2023, No Labels, Inc. appointed an Arizona state committee that

15   adopted a constitution and bylaws, forming No Labels Arizona. (Const. & Bylaws,

16   Unanimous Written Consent at 1–3.) The same day, No Labels Arizona State Chair Gail

17   Wachtel informed the Secretary that the Party "will not participate in the state's 2024

18   Presidential Preference Election"—which is within a party's prerogative in Arizona—and

19   reiterated that the Party "will nominate candidates only for the offices of President and Vice

20   President, and does not desire to have the names of candidates for any other office printed

21   on the official general-election ballot at the 2024 general election." (Wachtel Decl. Ex. C.)

22   When the Party became aware that certain persons had filed Statements of Interest to run for

23   other offices in Arizona under the Party insignia, counsel for the Party sent a letter to the

24   Secretary asking him to reject those Statements of Interest. (Wachtel Decl. Ex. D.)

25   On September 22, 2023, Colleen Connor, the State Elections Director, sent a letter

26   to counsel for the Party stating that the Secretary "disagrees with [the Party's] assertion

27   that a newly recognized political party can choose to deprive its own voters of their

28

---

[1] A.R.S. § 16-344 provides for the appointment of candidates for the office of presidential electors.

1   constitutionally protected freedom of association," including the right to "participate in

2   Arizona's Primary Election." (Wachtel Decl. Ex. E.) The letter also stated that the

3   Secretary "has the nondiscretionary duty to accept candidate filings such as statements of

4   interest, nomination papers, and nomination petitions" under A.R.S. § 16-311. (Wachtel

5   Decl. Ex. E.) Since then, at least three additional Party members have filed Statements of

6   Interest with the Secretary to run for state offices. (Joint Stip. Exs. 11–13.)

7        No Labels Arizona filed this lawsuit on October 19, 2023, raising two claims against

8   the Secretary based on his refusal to reject the Statements of Interest: (1) for violation of

9   Arizona state election laws, and (2) a 42 U.S.C. § 1983 claim for violation of the First and

10  Fourteenth Amendments of the United States Constitution. (Doc. 1, Compl.) The Party

11  now seeks preliminary and permanent injunctive relief enjoining the Secretary from

12  accepting Statements of Interest filed by persons intending to run as No Labels Arizona

13  candidates in the 2024 Primary Election, and from printing or distributing ballots that

14  include No Labels Arizona candidates for any office in the 2024 Primary Election or for

15  any office other than President and Vice President in the 2024 General Election.

16  **II.      LEGAL STANDARD**

17        To obtain preliminary injunctive relief, Plaintiff must show that "(1) [it is] likely to

18  succeed on the merits, (2) [it is] likely to suffer irreparable harm in the absence of

19  preliminary relief, (3) the balance of equities tips in [its] favor, and (4) an injunction is in

20  the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing

21  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008)). The Ninth Circuit Court of

22  Appeals, employing a sliding scale analysis, has also stated that "'serious questions going

23  to the merits' and a hardship balance that tips sharply toward the [movant] can support

24  issuance of an injunction, assuming the other two elements of the *Winter* test are also met."

25  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1078 (9th Cir. 2013) *cert. denied*, 134 S.

26  Ct. 2877 (2014) (quoting *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1132

27  (9th Cir. 2011)).

28

1    In the Ninth Circuit, a mandatory injunction—generally defined as an injunction

2   ordering a responsible party to affirmatively take a specific action—is subject to a higher

3   standard than a prohibitory injunction that prevents the party from taking an action, thereby

4   preserving the status quo. *Hernandez v. Sessions*, 872 F.3d 976, 998–99 (9th Cir. 2017).

5   "Mandatory injunctions . . . are permissible when 'extreme or very serious damage will

6   result' that is not 'capable of compensation in damages,' and the merits of the case are not

7   'doubtful.'" *Id.* at 999 (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH &*

8   *Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).

9   **III.    ANALYSIS**

10    The determination whether Plaintiff seeks mandatory or prohibitory injunctive relief

11   affects the standard to be applied, so the Court addresses that question first. The Ninth Circuit

12   has highlighted the complexities of discerning between mandatory and prohibitory

13   injunctions in many instances, referring to "the inherent contradictions underlying the

14   somewhat artificial legal construct that cause so many to question the inquiry," but circuit

15   precedent requires courts to make the determination "as best we can." Id. at 998. Plaintiff's

16   requested relief is for an order enjoining the Secretary from "accepting as valid any

17   Statements of Interest filed by persons expressing interest to run as No Labels Arizona

18   candidate for any 2024 primary election" as well as printing or distributing associated ballots

19   in the Primary or General Elections. (Doc. 6-4, proposed Preliminary Injunction Order.)

20    The Secretary characterizes this relief as mandatory in that it requires him to

21   affirmatively change the procedures he follows so that his office does not accept certain

22   Statements of Interest or produce associated ballots, which would deprive Party members

23   (who are not parties to this lawsuit) from ballot access. Plaintiff characterizes the relief

24   sought as prohibitory because it prevents the government from following a procedure that

25   will result in an unconstitutional disregard of Plaintiff's right to associate under the First

26   Amendment. Under Ninth Circuit precedent, Plaintiff has the better argument. Plaintiff

27   seeks relief based on its argument that it is likely to succeed in showing the Secretary's

28   acts violate (or will violate) Arizona law and the United States Constitution. If the Court

1    agrees, the injunctive relief will merely prevent the Secretary from following a procedure

2    that would have unconstitutional results, which the Ninth Circuit has held is a prohibitory

3    injunction. *See id.* ("This . . . injunction prevents future constitutional violations, a classic

4    form of prohibitory injunction.") (citing, *e.g.*, *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d

5    1053, 1060–61 (9th Cir. 2014)). Accordingly, the Court will apply the unaltered *Winter*

6    factors to determine if Plaintiff is entitled to injunctive relief.

7            **A.**     **Likelihood of Success on the Merits**

8            **1.**     **Arizona Election Law Claim (Count 1)**

9          The Party's first claim is that the Secretary's acceptance of Statements of Interest

10   from Party members intending to run in the Primary Election for office under the Party

11   insignia is a violation of state election law. In so claiming, the Party points principally to

12   A.R.S. § 16-301(A), which states:

> At a primary election, each political party entitled and intending to make
> nominations for the ensuing general or special election, if it desires to have
> the names of the candidates printed on the official ballot at that general or
> special election, shall nominate its candidates for all elective, senatorial,
> congressional, state, judicial, county and precinct offices to be filled at such
> election except as provided in §16-344.

17   Emphasizing the phrases "intending to make nominations" and "if it desires to have the

18   names of the candidates printed," the Party argues that it has expressly stated it does not

19   intend to make nominations for the Primary Election or desire to have the names of

20   candidates printed for state offices, and the Secretary's acceptance of Statements of Interest

21   is thus in contravention of § 16-301(A).

22         The Secretary contends that § 16-301(A) must be considered in the context of the

23   entire set of Arizona election laws and that this section simply requires that political parties

24   nominate candidates through primary elections in lieu of any other process, such as direct

25   nomination by a party. The Secretary argues that A.R.S. § 16-311(H) allows any person in

26   a political party to file a Statement of Interest to run as a candidate for a state office, and

27   from that statute arises a nondiscretionary duty on the part of the Secretary to accept

28   properly filed Statements of Interest.

1    At base, No Labels Arizona is unlike other political parties, the structure of which
2    likely informed the Arizona statutory framework for elections. No Labels Arizona is a party
3    in which its registered members do not speak for the Party in the way members of other
4    parties do; that is, among other things, No Labels Arizona does not allow its registered
5    members to run for public office in Arizona under the Party insignia. The fact that at least
6    five registered members of the Party are attempting to run anyway may be explained in
7    part by the text of the Party's petition to be recognized as a political party in Arizona, which
8    stated that those who signed the petition were requesting that the Party "be represented by
9    an official party ballot at the next ensuing regular primary election, to be held on the
10   August 6, 2024." (Doc. 19, Joint Statement of Stip. Facts & Exs. ¶ 11.) But the Party,
11   through its bylaws, intends not to be represented by an official party ballot at the primary
12   election. Of course, this lawsuit would have been avoided if the Party had enforced its
13   bylaws on its members or certain registered members of the Party had complied with the
14   Party's bylaws. As they have not complied, No Labels Arizona asks the Court to enjoin the
15   Secretary from accepting those members' Statements of Interest, essentially putting the
16   onus on the Secretary to enforce the Party's bylaws in lieu of following the existing
17   procedures implementing the statutory framework for elections in Arizona.

18        But nothing in the statutory framework or the Secretary's procedures implementing
19   that framework provides for the rejection of Statements of Interest properly filed by
20   registered members of a political party in Arizona. The Court agrees with the Secretary
21   that, considered within the statutory framework as a whole, § 16-301(A) merely requires
22   parties to nominate candidates through the primary election process and not in another way.
23   A Statement of Interest filed by a registered member of a political party is a form of
24   expressing that party's intent to nominate a candidate for the general election. Indeed, for
25   its part, § 16-311(H) allows any registered member of a political party to file a Statement
26   of Interest to run as a candidate for a state office and does not subject those Statements of
27   Interest to a review by the Secretary to determine if they comply with the party's bylaws.
28   In this respect, the Secretary's acts in accepting or intending to accept the Statements of

1   Interest are not so much "forcing" No Labels Arizona to run candidates, as characterized

2   by the Party, as those acts are in compliance with ordinary election practices in Arizona

3   under the relevant statutes. Accordingly, the Court finds the Secretary's acts did not violate,

4   but rather complied with, Arizona election law, and the Party's first claim fails.

5                    **2.      Constitutional Claim (Count 2)**

6         The greater question—that which the parties spent most of their time discussing in

7   the hearing—is whether the Secretary's acts are an infringement of No Labels Arizona's

8   freedom to associate under the First Amendment, which the Party brings as a § 1983 claim.

9   To state a § 1983 claim, a plaintiff "must allege the violation of a right secured by the

10  Constitution and laws of the United States," committed by "a person acting under color of

11  state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The First Amendment protects the right

12  to associate with others to exercise the freedom of speech expressly protected by the text

13  of the First Amendment, including "'the freedom to join together in furtherance of common

14  political beliefs.'" *Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000) (quoting

15  *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214–15 (1986)). And this right is

16  "protected by the Fourteenth Amendment from infringement by any State." *Democratic*

17  *Party of U.S. v. Wis. ex rel. La Follette*, 450 U.S. 107, 121 (1981).

18        The parties do not dispute that the Secretary is acting under color of state law or that

19  No Labels Arizona has a First Amendment right to associate in furtherance of common

20  political beliefs. But the Secretary argues—and the Party strongly disagrees in this

21  context—that the Party's "freedom of association ends where the fundamental political

22  rights of others begin," including "the right to vote," which "is fundamental." (Resp. at

23  8-9.) The Secretary contends that the state's interest in ensuring fair elections outweighs

24  the Party's "nomination-by-fiat preference." (Resp. at 9.)

25        In support of his argument, the Secretary relies on *Alaskan Independence Party v.*

26  *Alaska*, 545 F.3d 1173 (9th Cir. 2008). There, the Alaskan Independence Party and Alaskan

27  Libertarian Party (the "third parties") challenged Alaska's mandatory direct primary

28  system—similar to that of Arizona—for the selection of candidates for the state's general

1    election ballot. *Id.* at 1175. The third parties argued that they had the associational right "to

2    determine how their candidates to appear on Alaska election ballots are to be selected, and

3    the State of Alaska must allow a political party to select its candidates for the general

4    election ballot in a manner acceptable to the political party." *Id.* at 1176.

5         In denying the third parties' request for injunctive relief, the Ninth Circuit weighed

6    Alaska's interest in its state-run mandatory primary system against the third parties'

7    associational rights. *Id.* at 1176–77. The court recognized Alaska's interest in "remov[ing]

8    party nominating decisions from the infamous 'smoked-filled rooms' and plac[ing] them

9    instead in the hands of the party's rank-and-file," and the court looked to Supreme Court

10   precedent providing that "it is 'too plain for argument' that 'a State may require parties to

11   use the primary format for selecting their nominees, in order to assure that intraparty

12   competition is resolved in a democratic fashion.'" *Id.* at 1177 (quoting *Jones*, 530 U.S. at

13   572). Those interests outweighed the claimed burden on the third parties' associational

14   rights in the form of not permitting the third parties' leaders to pre-select or screen their

15   candidates on the primary ballot; that claimed burden was not severe because the third

16   parties' nominees were still "selected democratically by registered party voters . . . from a

17   slate of all qualified, affiliated candidates who seek the nomination." *Id.* at 1179–80.

18        As No Labels Arizona argues, that case differs significantly from the present one.

19   There, the court addressed whether a political party *that intended to run a candidate for an*

20   *office* could pre-select its candidates for the primary election in contravention of the

21   mandatory primary system, weighing Alaska's interest in eliminating potential corruption

22   and considering that associational rights were not significantly burdened by a system

23   allowing party members to select a candidate from a slate of fellow party members. Here,

24   neither of those considerations are at play. The state does not have an interest in eliminating

25   corruption in a primary election (or in a party's selection of its primary candidates) where

26   the party is not running any candidates. Likewise, the Party members and voters do not

27   have rights, associational or otherwise, in selecting a nominee for an office the Party is not

28   seeking.

1    In arguing that its associational rights are infringed where the Secretary places

2 candidates on the primary ballot in contravention of its intention not to run any candidates

3 in the primary as expressed in its constitution and bylaws, the Party cites among other cases

4 *Tashjian*, 479 U.S. at 210–11, in which the Supreme Court examined whether

5 Connecticut's closed primary system—allowing only registered members of a political

6 party to vote in that party's primary election—infringed on the Republican Party of

7 Connecticut's associational rights where the party adopted a rule allowing independent

8 voters—those not affiliated with any political party—to vote in Republican primaries. The

9 Supreme Court ruled in favor of the Republican Party, holding that a political party's

10 "determination of the boundaries of its own association, and of the structure which best

11 allows it to pursue it political goals, is protected by the Constitution." *Id.* at 224. In the face

12 of the state's argument "that its statute is well designed to save the Republican Party from

13 undertaking a course of conduct destructive of its own interests," the Supreme Court held

14 that "a State, or court, may not constitutionally substitute its own judgment for that of the

15 Party." *Id.* That is, "as is true of all expressions of First Amendment freedoms, the courts

16 may not interfere on the ground that they view a particular expression as unwise or

17 irrational." *Id.*

18    The Party also points to *Libertarian Party of Illinois v. Scholz*, 872 F.3d 518, 521-22

19 (7th Cir. 2017), in which the Seventh Circuit examined whether Illinois's full-slate

20 requirement—that a political party "must submit a full slate of candidates, one for each

21 race in the relevant political subdivision"—violated the Libertarian Party of Illinois's

22 associational rights where the party wanted to run only a candidate for county auditor under

23 the party insignia. Although *Scholz* was in the context of whether the party had ballot access

24 under its party insignia, which is not at issue here, that court found that the full-slate

25 requirement "severely burdens the First Amendment rights" of the Libertarian Party in

26 forcing it to run "candidates for races they want nothing to do with," including by requiring

27 the party "to devote to each candidate the funding and other resources necessary to operate

28 a full-fledged campaign." *Id.* at 524.

1     In a case such as this, the Court must weigh "the character and magnitude of the

2   asserted injury to the rights protected by the First and Fourteenth Amendments that the

3   plaintiff seeks to vindicate against the precise interests put forward by the State as

4   justifications for the burden imposed by the rule." *Id.* at 523 (internal quotations omitted).

5   The Court finds that Arizona's interests are minimal in this context, whereas the burden on

6   the Party is substantial. As discussed above and contrary to the Secretary's arguments, this

7   case does not implicate the interests at issue in *Alaskan Independence Party* of eliminating

8   corruption in a party's selection of its primary candidates because the Party intends not to

9   run *any* candidates in the primary. Moreover, Arizona voters do not have the right to select

10  a nominee for an office the Party is not seeking.

11    The Secretary also raises the idea that registered members of the Party, as individual

12  citizens, have the right to appear on a ballot as the Party's candidate, but that idea is

13  unsupported in the case law. *See N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196,

14  203–204 (2008) (stating that the associational rights of a political party did not confer

15  associational right on an individual candidate); *Wash. State Grange v. Wash. State*

16  *Republican Party*, 552 U.S. 442, 453 n.7 (2008) (noting that even political parties do not

17  have the "right to have their nominees designated as such on the ballot"). To the extent an

18  individual citizen has the right to appear on the ballot at all, the citizen can appear on the

19  ballot without party affiliation (or in the primary of another political party) after meeting

20  the state's requirements to do so. At the hearing, the Secretary also raised concerns that No

21  Labels Arizona voters might expect to receive primary ballots and will be confused when

22  they do not receive them, and that such confusion could lead to threats against election

23  workers. But the Secretary provided no evidentiary or legal support for these suggested

24  interests.

25    On the other hand, as noted above, the Party has First Amendment rights to define

26  the boundaries and structure of its association, including what offices it intends to seek.

27  *See Tashjian*, 479 U.S at 224. The Secretary's acts leading to placement of candidates on

28  the primary election ballot under the Party insignia for offices the Party does not intend to

1    seek infringes on the Party's associational rights to structure itself, choose a standard bearer

2    who speaks for the Party, and decide where to devote its resources. *See id.*; *Scholz*, 872

3    F.3d at 524 (requiring a party to run candidates for offices it does not want burdens the

4    party's allocation of resources and "the right of a candidate to run as the standard bearer

5    for his party"). Simply because the state may disagree with the Party's choices in

6    structuring or setting boundaries for itself does not entitle the state to constitutionally

7    substitute its judgment for the Party's judgment. *See Tashjian*, 479 U.S at 224. Weighing

8    the state's minimal interests against the substantial burden on the Party, the Court

9    concludes that the Secretary's acts in furtherance of placing Party candidates on the

10   primary ballot infringe on the Party's First and Fourteenth Amendment rights.

11       **B.    The Other *Winter* Factors**

12       The Court agrees with No Labels Arizona that it is likely to suffer irreparable harm

13   by way of the loss of its First Amendment rights in the absence of injunctive relief. *See*

14   *Elrod v. Burn*, 427 U.S. 347, 373 (1976).

15       Because the state opposes injunctive relief, examination of the balance of equities

16   and the public interest merge in this case. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As

17   detailed above, Arizona and its voters have minimal interest in candidates running for

18   offices under the Party insignia that the Party does intend to seek. The Party has substantial

19   First Amendment rights to structure itself, speak through a standard bearer, and allocate its

20   resources. The balance of equities thus tips in favor of the Party.

21       For all of these reasons, the Court finds that No Labels Arizona succeeds on the

22   merits of its claim that the Secretary's conduct infringes and will infringe on its First

23   Amendment rights (Count 2) and that it is entitled to the preliminary and permanent

24   injunctive relief requested.[2] With the exception of its prayer for attorneys' fees and costs,

25   the Party sought only injunctive relief in the Complaint (Doc. 1), so the Court will enter

26   judgment in favor of the Party on Count 2 of the Complaint.

27

28       [2] The parties acknowledge that the Party's request for a preliminary injunction became a request for a permanent injunction, with the January 5, 2024 hearing acting as a trial on the merits. (Resp. at 5; Reply at 2.)

**IT IS THEREFORE ORDERED** granting Plaintiff The No Labels Party of Arizona's Motion for Preliminary Injunction (Doc. 6).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter Judgment in favor of Defendant as to Count 1 of the Complaint and in favor of Plaintiff as to Count 2 of the Complaint. The Judgment shall include the following terms.

**IT IS FURTHER ORDERED** that the Secretary of State, in his official capacity, and his officers, agents, servants, and employees, are enjoined from engaging in, committing or performing, directly or indirectly, by any means whatsoever, any of the following acts:

1. Accepting as valid any Statements of Interest filed by persons expressing interest to run as No Labels Arizona candidates for any 2024 primary election;

2. Printing or distributing, or causing or assisting in the printing or distribution of, ballots that include No Labels Arizona candidates for any office in the 2024 primary election; and

3. Printing or distributing, or causing or assisting in the printing or distribution of, ballots that include No Labels Arizona candidates for any office in the 2024 general election except for the offices of President and Vice President, should No Labels Arizona nominate candidates for those offices.

**IT IS FURTHER ORDERED** that the Court will retain jurisdiction over this matter to ensure the Secretary of State's compliance with this Order.

**IT IS FURTHER ORDERED** that the parties shall file any application for attorneys' fees and costs by February 16, 2024.

**IT IS FURTHER ORDERED** directing the Clerk of Court to close this matter.

Dated this 16th day of January, 2024.

Honorable John J. Tuchi
United States District Judge