1  David B. Rosenbaum, No. 009819
   Andrew G. Pappas, No. 034432
2  Emma J. Cone-Roddy, No. 034285
   Brandon T. Delgado, No. 035924
3  OSBORN MALEDON, P.A.
   2929 North Central Avenue, 20th Floor
4  Phoenix, Arizona 85012-2793
   (602) 640-9000
5  drosenbaum@omlaw.com
   apappas@omlaw.com
6  econe-roddy@omlaw.com
   bdelgado@omlaw.com
7
   Attorneys for Plaintiff
8

9          IN THE UNITED STATES DISTRICT COURT

10            FOR THE DISTRICT OF ARIZONA

11  The No Labels Party of Arizona,

12                        Plaintiff,          No. 2:23-cv-02172-JJT

13  vs.                                       **THE NO LABELS PARTY OF
                                              ARIZONA'S OPPOSITION TO THE
14  Adrian Fontes,                            SECRETARY'S EXPEDITED
                                              MOTION FOR A STAY PENDING
15                        Defendant.          APPEAL**

16

17

18         For all the reasons the Court entered an injunction in the first place, it should deny

19  the Secretary of State's request to stay that injunction.  The Secretary already has failed

20  on the merits, the balance of hardships and the public interest tip in favor of the No Labels

21  Party of Arizona ("No Labels Arizona" or "the Party"), and neither the Secretary nor the

22  public will suffer irreparable harm absent a stay.

23         The Secretary rehashes the same arguments he made and lost at trial.  As before,

24  he tries to make this case something it is not.  He argues (at 2) that this case concerns

25  Arizona's "century-old direct primary law," which prevents "having nominees selected

26  by party bosses."  But this case is not a challenge to the primary law and it is not about

27  party bosses choosing a party's candidates.  As the Court recognized in its final order

28  (Doc. 25), this case involves No Labels Arizona's constitutional right to determine not to

1   participate, at all, in an election.  That decision is inextricable from the boundaries of the

2   party's association and the structure that best allows it to pursue its political goals—here,

3   to focus only on elections for President and Vice President.  The Secretary's disapproval

4   of No Labels Arizona's structure and priorities is well documented, including in his

5   Motion.  But under our Constitution, a political party does not need the State's permission

6   to decide how to structure itself or what political goals to pursue.  As the Court held, the

7   Constitution guarantees that the party itself gets to make those choices.

8        The Court should deny the Secretary's Motion.

9   **I.    LEGAL STANDARD**

10       **A.    Stay pending appeal.**

11       The standard for a stay pending appeal is essentially the same standard the Court

12   already applied in ruling in favor of No Labels Arizona on the merits: "In deciding a

13   motion to stay an order pending appeal, [courts] consider: '(1) whether the stay applicant

14   has made a strong showing that he is likely to succeed on the merits; (2) whether the

15   applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

16   substantially injure the other parties interested in the proceeding; and (4) where the public

17   interest lies.'"  *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006–07 (9th Cir. 2020) (citation

18   omitted).  "Under the 'sliding scale' approach [courts] use, 'the elements of the

19   preliminary injunction test are balanced, so that a stronger showing of one element may

20   offset a weaker showing of another.'"  *Id.* at 1007.  (citation omitted).  This same "sliding

21   scale approach applies to the consideration of stays pending appeal."  *Id.*

22       **B.    The Supreme Court has overruled the specific application of the sliding**

23            **scale that the Secretary attempts to apply.**

24       The Secretary argues (at 4) that the sliding scale allows the Court to grant a stay if

25   it finds either "(1) a combination of probable success on the merits and the *possibility of*

26   *irreparable harm*; or (2) that serious questions are raised and the *balance of hardships*

27   *tips* in its favor."  (citation omitted).  For support, the Secretary cites *A&M Records, Inc.*

28   *v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

1    After the Supreme Court's 2008 decision in *Winter v. Natural Resources Defense*

2    *Council*, 555 U.S. 7 (2008), the specific sliding scale proposed by the Secretary above is

3    no longer good law.  *See All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th

4    Cir. 2011).  Post-*Winter*, the moving party "must establish that irreparable harm is *likely*,

5    not just possible."  *Id.*  In addition, if a moving party shows only "serious questions"

6    going to the merits, the balances of hardships must tip "*sharply*," not *merely* tip generally

7    in favor of the movant.  *Id.* at 1031–32 (emphasis added).

8    This is exactly what the Court recognized in its decision on the merits here:

9    "serious questions going to the merits' and a hardship balance that tip sharply toward the

10   [movant] can support issuance of an injunction, assuming the other two elements of the

11   *Winter* test are also met."  Doc. 25 at 3  (citation omitted).  The Court correctly applied

12   the post-*Winter* test in ruling in favor of No Labels Arizona.  The Secretary offers no new

13   facts, nor could it post-trial.  For all the same reasons the Court granted the injunction, it

14   should deny the stay the Secretary seeks.

15   **II.      ARGUMENT.**

16           **A.      The Secretary failed on the merits and is unlikely to succeed on appeal.**

17   To determine whether the Secretary was violating No Labels Arizona's

18   constitutional rights, the Court correctly "[w]eigh[ed] the state's minimal interests against

19   the substantial burden on the Party," and "conclude[d] that the Secretary's acts in

20   furtherance of placing Party candidates on the primary ballot infringe on the Party's First

21   and Fourteenth Amendment rights."  Doc. 25 at 11.  The Secretary thus already has failed

22   on the merits, and, as set forth below, nothing in his stay motion suggests he is likely to

23   succeed on appeal.

24                   **1.      The Court correctly weighed the State's minimal interests**

25                           **against the substantial burden on No Labels Arizona's rights.**

26   "In a case such as this, the Court must weigh 'the character and magnitude of the

27   asserted injury to the rights protected by the First and Fourteenth Amendments that the

28   plaintiff seeks to vindicate against the precise interests put forward by the State as

3

justifications for the burden imposed by the rule.'"  Doc. 25 at 10 (quoting *Libertarian Party of Illinois v. Scholz*, 872 F.3d 518, 523 (7th Cir. 2017)).  The Secretary agrees (at 6) that this is the appropriate test.

Under this test, where, as here, a party's First and Fourteenth Amendment rights "are subjected to 'severe' restrictions," the state "regulation must be narrowly drawn to advance a state interest of compelling importance." !*Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citation and quotation marks omitted).  "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (citation omitted).

Here, the Court (at 10) correctly found that "the burden on the Party is substantial." Doc. 25.  The Court observed that "the Party has a First Amendment right to define the boundaries and structure of its association, including what offices it intends to seek." *Id.* (citing *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 224 (1986)).  And the Court concluded that "[t]he Secretary's acts leading to placement of candidates on the primary election ballot under the Party insignia for offices the Party does not intend to seek infringes on the Party's associational rights to structure itself, choose a standard bearer who speaks for the Party, and decide where to devote its resources."  Doc. 25 at 10–11 (citing *Tashjian*, 479 U.S. at 224; *Scholz*, 872 F.3d at 524.  The Secretary's attempt to force No Labels Arizona to participate in the primary elections for those offices, the Court thus reasoned, significantly "infringe[s] on the Party's First and Fourteenth Amendment rights."  Doc. 25 at 11.

By contrast, the Court also concluded that "Arizona's interests are minimal in this context." *Id*. at 10.  The Court explained that "this case does not implicate the interests at issue in *Alaskan Independence Party* [*v. Alaska*, 545 F.3d 1173 (9th Cir. 2008)] of eliminating corruption in a party's selection of its primary candidates because [No Labels Arizona] intends not to run *any* candidates in the primary."  Doc. 25 at 10.  The Court further explained that "Arizona voters do not have the right to select a nominee for an

4

office the Party is not seeking," and rejected as "unsupported in the case law" the "idea that registered members of the Party, as individual citizens, have the right to appear on a ballot as the Party's candidate." *Id.* The Court also rejected the Secretary's "concerns"—raised for the first time at the hearing, and unsupported by any "evidentiary or legal support"—about supposed voter confusion and resulting "threats against election workers." *Id.*

Weighing the State's and the Party's respective interests against each other, the Court accordingly had little difficulty in determining that the equities favored granting No Labels Arizona an injunction against the Secretary's unconstitutional acts.

**2.      The Secretary is unlikely to prevail on appeal.**

Nothing in the Secretary's Motion shows that the Ninth Circuit is likely to reach a different conclusion, or even that the Secretary raises serious questions going to the merits. *See Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011) (noting serious questions means "[m]ore than a mere 'possibility' of relief is required" (citation omitted)). On the contrary, each of the Secretary's critiques on the merits fails.

**a.** To begin, the Secretary (at 5) contends that only "a reasonable, nondiscriminatory restriction on political party leadership's strategic choices" is at issue. But the Secretary makes no effort to back up that *ipse dixit* conclusion. The Court should reject any attempt by the Secretary to develop this argument in his reply. *Rascon v. Brookins*, No. CV-14-00749, 2018 WL 783675, at *14 (D. Ariz. Feb. 8, 2018) (where the "initial argument" was "undeveloped," the court would not consider the party's "attempt to fully develop this argument in its Reply"). And as demonstrated above, the Court got it right the first time in concluding that the burden on the Party is substantial.

**b.** The Secretary (at 10–12) also takes aim at *Tashjian* and *Scholz*, but his efforts to distinguish those decisions are unavailing. As the Secretary notes (at 10), "the Court cited *Tashjian* for the familiar proposition that [a] political party [can] determine 'the boundaries of its own association.'" The Secretary insists (at 10) that *Tashjian* does not reflect an "absolutist" "approach to the right of association," but neither does the Court's

1   nuanced Order here.

2   The Secretary argues (at 10–11) that "the *Tashjian* court explicitly rejected the

3   argument that it should 'protect[] the integrity of the Party against the Party itself,'" and

4   he claims that No Labels Arizona is asking for the same thing here.  The Secretary

5   misapprehends the significance of both *Tashjian* and this case.  What the Supreme Court

6   rejected in *Tashjian* was the state's attempt to "substitute its own judgment for that of the

7   Party," in that case through a statute the state claimed was "well designed to save the

8   Republican Party from undertaking a course of conduct destructive of its own interests."

9   *Tashjian*, 479 U.S. at 224 (quoting *Democratic Party of U.S. v. Wis. ex rel. LaFollette*,

10  450 U.S. 107, 123–24 (1981)).  Likewise, here, the Court rejected the Secretary's attempt

11  to substitute his own judgment for No Labels Arizona's, in this case by forcing the party

12  to participate in elections it wants nothing to do with: "Simply because the state may

13  disagree with the Party's choices in structuring or setting boundaries for itself does not

14  entitle the state to constitutionally substitute its judgment for the Party's judgment."

15  Doc. 25 at 11 (citing *Tashjian*, 479 U.S. at 224).  Contrary to the Secretary's claim (at

16  11), *Storer v. Brown*, 415 U.S. 724 (1974)—a case upholding party-disaffiliation

17  requirements for unaffiliated candidates—has little relevance to this suit and certainly

18  does not suggest a different result.

19  The Secretary also criticizes (at 10–12) the Court's reliance on *Scholz*, in which

20  the Seventh Circuit rejected Illinois' attempt to force a minor party to field candidates for

21  offices it did not want to seek.  The Secretary claims (at 10–12) that *Scholz* is "inapposite"

22  and "[un]helpful" because, unlike Illinois, "Arizona does not have a full-slate

23  requirement, [so] there is no similar burden on No Labels to find and recruit candidates

24  instead of focus[ing] on its main objective," or to "devote *any* funding or resources to

25  help any candidates except those it chooses."  The Secretary misses the point.  Although

26  Arizona law does not impose a full-slate requirement, the Secretary seeks to indirectly

27  give it the same effect: he claims that by choosing to participate in a single race (the

28  election for President and Vice President), No Labels Arizona is required to participate

1 over its objection in *every other* statewide or federal election in which any one party

2 member wants to seek office as the party's nominee.  And this—as the Court correctly

3 concluded—"infringes on the Party's associational rights to structure itself, choose a

4 standard bearer who speaks for the Party, and decide where to devote its resources."

5 Doc. 25 at 11 (citation omitted).  No Labels Arizona has the constitutional right to keep

6 its focus laser sharp and not have to compete with the two major national parties in every

7 local race up and down the ballot.

8         **c.** The Secretary also spends multiple pages (at 6–8) rearguing the relevance and

9 applicability of *Alaskan Independence Party*, a case in which the Ninth Circuit concluded

10 that Alaska could require parties that *had chosen to run candidates for offices* to nominate

11 them through a state-run direct primary.  Most of the Secretary's arguments—such as his

12 claim that the issues here and in *Alaskan Independence Party* are "exact[ly]" the same,

13 *compare* Doc. 29 at 8 *with* Doc. 16 at 10—rehash arguments the Court soundly rejected.

14         Two key points bear emphasizing in response.  First, the Secretary claims (at 7)

15 that "the bylaws of the minor parties in *AIP* (similar to No Labels here) provided for

16 alternative mechanisms to select nominees on the general election ballot."  But the

17 Secretary fails to mention a key difference: in *Alaskan Independence Party*, the parties'

18 bylaws authorized them to nominate candidates for all elective offices for which the

19 parties were eligible.  545 F.3d at 1176 n.1.  Here, in contrast, No Labels Arizona's

20 Constitution and Bylaws authorize the party to nominate candidates for President and

21 Vice President only and *forbid* the party to nominate candidates for other offices.  Doc. 19

22 at 2, ¶ 7 & Ex. 1 at § 2(b).

23         Second, and relatedly, the Secretary fails to grapple meaningfully with the key

24 distinction the Court drew between this case and *Alaskan Independence Party*: "There,

25 the court addressed whether a political party *that intended to run a candidate for an office*

26 could pre-select its candidates for the primary election in contravention of the mandatory

27 primary system," Doc. 25 at 8, whereas here No Labels Arizona does not intend to

28 nominate candidates to appear on the ballot for *any* office that requires a direct primary.

1   That difference is critical, because the question whether to nominate candidates and

2   participate in elections for particular offices goes right to the heart of No Labels Arizona's

3   associational rights.   No Labels Arizona has structured itself so as to pursue its

4   organizational objectives, as the Secretary himself does not contest.  Doc. 19 at 1–2, ¶¶ 3–

5   9.

6          The Secretary (at 7–8) derides No Labels Arizona's organizational structure and

7   purpose as "partisan gamesmanship," and says "*AIP* . . . rejected it" by concluding "[t]he

8   state's goals would clearly be impeded if party leaders could either *opt out of the primary*

9   *altogether* or interfere with the democratic process by exercising veto power over the

10  candidates that might seek the nomination."  But again, the Secretary misses the point.

11  Alaska's goals in that case—which concerned the process by which parties nominated

12  individual candidates—are *not* implicated here given No Labels Arizona's decision not

13  to nominate candidates for offices other than President and Vice President at all.  Doc. 25

14  at 8.  *Alaska Independence Party* was about whether parties could override a state-

15  mandated primary to nominate candidates to appear on the general-election ballot; this

16  case is about whether a minor party can be forced to nominate candidates in the first place.

17          **d.**  The Secretary lodges two other arguments.  Both fall flat.  First, he claims (at

18  8) that "there is no administrable limiting principle in this order which allows the

19  Secretary to follow state law and comply with the parties' freedom of association,

20  especially," he says, "when the party holds unilateral authority to transform even the most

21  mundane statutory framework, like the direct primary, into an infringement of their rights

22  on a whim."  The Secretary continues to mischaracterize this case and evince surprising

23  hostility to parties' associational rights.  *Id*. at 8–9.

24          His complaints also ring hollow.  The injunction is narrow: it applies only to

25  candidates purporting to run under No Labels Arizona's banner.  At trial, the Secretary

26  did not even argue, as he does now, that he lacks resources, much less adduce any

27  evidence on this point. And it is simply not true that the Secretary lacked "the information

28  necessary to reject" candidate filings in this case.  Doc. 29 at 8.  On June 2, 2023, *seven*

8

1    *weeks before the first statement of interest was filed*, the Secretary was informed that No

2    Labels Arizona would not be nominating candidates for any offices other than President

3    and Vice President.  Doc. 19 at 3, ¶ 13.  When the Party's chair sent a letter to the

4    Secretary on August 11, 2023 opting out of the State's 2024 Presidential Preference

5    Election, she again informed him that "the No Labels Party will nominate candidates only

6    for the offices of President and Vice President, and does not desire to have the names of

7    candidates for any other office printed on the official general-election ballot at the 2024

8    general election." *Id.*, ¶ 14.  The Party reiterated that position in an August 14, 2023 letter

9    to the Secretary.   *Id.*, ¶ 15.   The Secretary didn't need "unlimited resources or

10   omniscience" to reject the filings at issue.  Doc. 29 at 8.  He didn't even need to "verify"

11   the Party's bylaws.  *Id.*[1]   The Secretary just needed to read the letters the Party and its

12   chair sent him and respect the Party's decision.  Instead, he attempted to override that

13   decision.  Doc. 19 at 4, ¶ 16.

14        Next, the Secretary argues (at 9) that "there is no way to ensure candidates and

15   voters are provided the information they need to make an educated choice about *their*

16   association."  As with the previous argument, the Secretary does not explain what this has

17   to do with the merits of No Labels Arizona's constitutional claim.  If the Secretary is

18   attempting to assert this as a new state interest after judgment was already entered against

19   him, it is too little, too late.  In any event, for purposes of this litigation, the Secretary

20   does not contest "that No Labels Arizona was established for the purpose of placing yet-

21   to-be-identified nominees for President and Vice President on the 2024 general-election

22   ballot" and, to achieve its organizational objectives, the party will not nominate

23

24   [1] The Secretary's suggestion (at 8) that the Court's order would force him "to verify that
     the bylaws for all political parties" is a red herring.  Nothing in the order or judgment
25   requires him to verify any party's bylaws.  Bylaws don't even have to be filed with the
     Secretary.  And even under his own flawed reasoning, the burden would be minimal.
26   While there may be "hundreds of candidates" (*id.*), there are only five political parties.
     *Information about Political Parties*, Arizona Secretary of State,
27   https://azsos.gov/elections/about-elections/information-about-political-parties (Jan. 31,
28   2024).

9

1    candidates for any other offices.   Doc. 19 at 1–2, ¶¶ 3–9.   Again, the Secretary

2    undisputedly knew which elections No Labels Arizona would and would not participate

3    in by June 2, 2023, at the latest, when the party directly and expressly notified him of its

4    intentions.  *Id.* at 3, ¶ 13.  His claim (at 9) that voters and candidates were somehow left

5    in the dark is supported by no evidence at trial.   And he seemingly overlooks the

6    fundamental point that the associational rights at play here rest with the party, not

7    individual candidates or voters.  *See N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S.

8    196, 203–04 (2008) (associational rights of a political party do not confer associational

9    right on an individual candidate).

10              **B.  The balance of hardships and public interest favor No Labels Arizona.**

11              The Secretary also fails to show that either the balance of hardships or the public

12   interest tips in his favor.   The Court already concluded they did not.   As the Court

13   explained, "Arizona and its voters have minimal interest in candidates running for offices

14   under the [No Labels Arizona] insignia that the Party does intend to seek," whereas "[t]he

15   Party has substantial First Amendment rights to structure itself, speak through a standard

16   bearer, and allocate its resources."   Doc. 25 at 11.   "The balance of equities," which

17   merges with the public interest, "thus tips in favor of the Party."  *Id.*

18              Nothing in the Secretary's Motion alters that conclusion.  He begins by arguing (at

19   12) that the injunction "contravenes Arizona law."  But the Constitution is "the supreme

20   Law of the Land," U.S. Const., art. VI, para. 2, and where a state actor like the Secretary

21   violates a party's federal constitutional rights, the constitutional rights prevail.

22              The Secretary further contends (at 12–13) the relief awarded is "unworkable" and

23   that "the Order does not explain how it can be administered."  The Secretary had *months*

24   to raise these concerns but failed to do so.  As just demonstrated, all the Secretary has to

25   do is abide by the injunction against him.  It is clear from the injunction that the Secretary

26   is prohibited from taking any action to place purported No Labels Arizona candidates on

27   the primary ballot and thus must reject any previously received statements of interest

28   and/or future nomination petitions.

1      The Secretary also says (at 12) that "the people of Arizona have an interest in

2  ordered elections."   This is true, but nothing about protecting No Labels Arizona's

3  constitutional rights disrupts that interest.

4      The Secretary again tries to assert (at 12) the rights of candidates and voters who

5  have chosen to affiliate themselves with No Labels Arizona.  But the Court correctly

6  rejected these arguments.  As the Court explained, "Arizona voters do not have the right

7  to select a nominee for an office the Party is not seeking." Doc. 25 at 10.  Similarly, "the

8  idea that registered members of the Party, as individual citizens, have the right to appear

9  on a ballot as the Party's candidate . . . is unsupported in the case law." *Id.*  A "citizen

10  can appear on the ballot without party affiliation (or in the primary of another political

11  party) after meeting the state's requirements to do so." *Id.*  And Arizona voters can still

12  support those individuals.  *See Duke v. Massey*, 87 F.3d at 1226, 1234 (11th Cir. 1996)

13  ("Duke's supporters were not foreclosed from supporting him as an independent

14  candidate, or as a third-party candidate").[2]

15      Finally, the Secretary says (at 13) "the Court's judgment would allow any party to

16  change its internal rules to limit who can join the party or run in future races at any time."

17  That is not true.  The Court's Order applies well established legal principles to the specific

18  facts of this case.

19      **C. The Secretary has waived any argument regarding irreparable harm.**

20      In the introduction of his Motion, the Secretary says (at 2) that a stay is "necessary

21  to avoid irreparable and severe harm to the Secretary and the public interest."  But besides

22  this introductory phrase, the Secretary never again mentions irreparable harm to himself

23  or the public.  *See generally* Doc. 29.  Because the Secretary failed to develop this

24

25  [2] The Secretary (at 13) quotes *Arizona Libertarian Party v. Hobbs*, 925 F.3d 1085, 1092
    (9th Cir. 2019), for the proposition that "[a] political party cannot manipulate its internal
26  preferences and processes to transform a constitutional statute into an unconstitutional
    one."  True, but irrelevant.  The question there was whether the Libertarian Party could
27  restrict who could sign candidate nominating petitions and then complain that statutory
    signature requirements were too high.  The question here is whether the Secretary can
28  force No Labels Arizona to nominate candidates when it has decided not to.

1    argument, it is waived. *Rascon*, 2018 WL 783675, at \*14. On this basis alone, the Court

2    should deny the Secretary's motion, as the Secretary has not shown that irreparable harm

3    is likely or even possible. *See All. for the Wild Rockies*, 632 F.3d at 1131 (irreparable

4    harm must be "likely" and not merely possible). The Secretary has not articulated, much

5    less proven, such irreparable harm, because none will occur.

6          To the extent the Secretary invokes in his reply the rights of voters and would-be

7    candidates, such an argument must fail. It is true that "loss of First Amendment freedoms,

8    for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*

9    *v. Burn*, 427 U.S. 347, 373 (1976). But as the Court found, the Secretary has been unable

10    to point to a single case that establishes First Amendment rights in the interests the

11    Secretary is advancing on behalf of voters and would-be candidates. Doc. 25 at 10–11.

12    In sum, the Secretary has not shown that irreparable harm is likely, which he must do

13    before the Court could issue a stay.

14  **III.**    **CONCLUSION.**

15          For the foregoing reasons, the Court should deny the Secretary's request for a stay

16    pending appeal.

17          DATED this 7th day of February, 2023.

18                         OSBORN MALEDON, P.A.

19                         By    /s/ David B. Rosenbaum

20                              David B. Rosenbaum
Andrew G. Pappas
Emma J. Cone-Roddy

21                              Brandon T. Delgado
2929 North Central Avenue, 20th Floor

22                              Phoenix, Arizona 85012-2793

23                              Attorneys for Plaintiff

24

25

26

27

28