KRISTIN K. MAYES
Attorney General
Firm State Bar No. 14000

Kara Karlson, Bar No. 029407
Karen J. Hartman-Tellez, Bar No. 021121
Senior Litigation Counsel
Kyle Cummings, Bar No. 032228
Assistant Attorney General
2005 North Central Avenue
Phoenix, AZ  85004-1592
Telephone (602) 542-8323
Facsimile (602) 542-4385
Kara.Karlson@azag.gov
Karen.Hartman@azag.gov
Kyle.Cummings@azag.gov
adminlaw@azag.gov

*Attorneys for Defendant Arizona
Secretary of State Adrian Fontes*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The No Labels Party of Arizona, an Arizona political party,<br><br>Plaintiff,<br><br>v.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State,<br><br>Defendant. | Case No:  2:23-cv-02172-JJT<br><br>**ARIZONA SECRETARY OF STATE'S RESPONSE TO APPLICATION FOR ATTORNEYS' FEES** |

This Court should exercise its significant discretion and not award fees in this case because:  1) the statutory framework the Secretary followed is constitutional; 2) it is only because "[a]t base, No Labels Arizona is unlike other political parties," (DE 25 at 6), that this litigation arose; and 3) the Secretary is required to follow the law, and not conduct the delicate judicial balancing that this Court engaged in when it declared that

1  the application of Arizona law to No Labels Arizona was unconstitutional given the
2  peculiarities of this case.  For these reasons, the Court should not award any fees, or in
3  the alternative, use its significant discretion to reduce the fee award.

## **RELEVANT BACKGROUND**

No Labels became a recognized political party in Arizona on March 7, 2023.  (DE 19 at ¶ 12).  Under Arizona law, one of the benefits of becoming a new party is that the new political party "shall be represented by an official party ballot at the next ensuing regular primary election" and "is entitled to representation as a political party on the official ballot through the next two regularly scheduled general elections." A.R.S. § 16-801(A), (B).  Thus, as a new party, No Labels is statutorily guaranteed ballot access for the 2024 and 2026 elections.  The Secretary does not have discretion to reject otherwise valid candidate papers, and "any person" is entitled to run for office as a member of the party with which they are associated.  A.R.S. § 16-311.  A number of individuals registered with the No Labels party filed statements of interest to run as No Labels candidates in July and early August.

On August 11, 2023, No Labels, Inc. formed an Arizona state committee which adopted a constitution and bylaws, creating No Labels Arizona.  No Labels sent correspondence to the Secretary, but no one else, stating that No Labels' desire was to only nominate candidates for the offices of the President and Vice President, and no other offices. (DE 19 at ¶¶ 13-16).  The Secretary responded that, among other things, he "has the non-discretionary duty to accept candidate filings such as statements of interest, nomination papers, and nomination petitions" under A.R.S. § 16-311. (DE 19-1). Indeed, the Court recognized this issue in its Order:

> This lawsuit would have been avoided if the Party had enforced its bylaws on its members, [but] No Labels Arizona asks the Court to enjoin the Secretary from accepting those members' Statements of Interest, essentially putting the onus on the Secretary to enforce the Party's bylaws in lieu of following the existing procedures implementing the statutory framework for elections in Arizona.  But *nothing* in the statutory framework of the Secretary's procedures

2

implementing that framework *provides for the rejection of Statements of Interest properly filed by registered members of a political party in Arizona.*

(DE 25 at 6) (emphasis added). The Court held that "the Secretary's acts did not violate, but rather complied with, Arizona election law, and the Party's first claim fails." (*Id.*). The Court found in No Labels' favor on the constitutional claim, but the constitutionality of No Labels' request, given Arizona's statutory framework, required careful balancing by a judicial officer, not a determination by the Secretary.

## ARGUMENT

Pursuant to 42 U.S.C. § 1988, the Court "in its *discretion*, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." (Emphasis added). A trial court's decision to award fees under 42 U.S.C. § 1988 is reviewed upon appeal for abuse of discretion. *See also Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998) (noting that fee awards pursuant to 42 U.S.C. § 1988 are within the trial court's discretion).

Judicial discretion is defined by Black's Law Dictionary as "[t]he exercise of judgment by a judge or court based on what is fair under the circumstances and guided by the rules and principles of law." Black's Law Dict. (11th ed. 2019) (discretion, 4). The award of attorneys' fees is not mandatory, and the Court should exercise its considerable discretion to recognize that the circumstances here militate strongly against the imposition of fees.

**I.   The Arizona Ballot Access Framework Is Facially Constitutional.**

There is nothing inherent in Arizona's statutory framework that is unconstitutional. Plaintiffs explicitly disclaimed this argument. (DE 18 at 7) ("No question, if No Labels Arizona were to participate in Arizona's direct primary election, it would be bound to follow every constitutional command."). Indeed, the crux of the argument distinguishing this case from binding precedent that would require a ruling against No Labels is that the Arizona framework *is* constitutional, assuming a political

3

party wishes to field candidates in those elections. (DE 25 at 7-8) (distinguishing this case from *Alaskan Independence Party v. Alaska,* 545 F.3d 1173 (9th Cir. 2008)).

Moreover, the Court held that the Secretary followed Arizona law, to the letter. (DE 25 at 7). No Labels had two distinct claims. Count One was that Arizona law forbids the Secretary from refusing to follow the directives of No Labels regarding which elections its candidates could participate in. (DE 6 at 5-8) ("Although the Court can, and should, decide this case based solely on Arizona law, if the Court concludes that the Arizona statute mandates or gives the Secretary discretion to require that a political party participate in elections against its wishes, then it should rule that the Secretary's actions here violate No Labels Arizona's constitutional rights."). The Court ruled against No Labels on Count One. "[T]he Court finds the Secretary's acts did not violate, but rather complied with, Arizona election law, and the Party's first claim fails." (DE 25 at 7).

The failure of the state law claim goes to the heart of the "reasonableness" of any fees that the Court may award. "We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley v. Eckerhart*, 461 U.S. 424, 439 (1983). The parties stipulated to the facts, and the legal claims were separate and distinct. None of the cases regarding the federal constitutional claims were cited regarding the state law claim, and vice versa. From the Complaint to the trial, No Labels repeatedly drew a sharp distinction between the state law claim and the constitutional claim. (DE 6 at 8); Trial Trans. 16:12-17 (noting that the Complaint and Motion for Preliminary Injunction "breaks the analysis down into two parts, the statutory and then the constitutional . . . and that the Court ought to attempt to resolve this short of a constitutional analysis."). These claims are so distinct, they should "be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.* at 435.

Because No Labels admits that Arizona laws regarding ballot access are constitutional, and it is only No Labels' decision to limit its members' participation to the Presidential and Vice Presidential election that warranted relief in this case, this Court should exercise its discretion not to award fees.

### II. Ministerial Acts of Filing Officers Should Not Subject Them to Fees When Those Acts are Performed in Good Faith and in Reliance on Constitutionally Valid Laws When an Irregular Situation Arises.

Unlike most 42 U.S.C. § 1983 actions, where state action is egregious or applies to a broad swath of people, the injunction provided a narrow carve-out predicated solely on No Labels' by-laws, as adopted on August 11, 2023, and on the unique nature of No Labels' party structure. No Labels prevailed on its constitutional claim only because of the unique make-up of this specific political party, and the relief was likewise limited to this political party for the 2024 election. This is an important consideration when discretion is being used to decide whether to provide compensation. This is particularly true when the leadership and governing documents could be changed on a whim at the direction of No Labels, Inc. (DE 19-1 at 6-10).

This Court recognized, and No Labels agreed, that its party structure is unique. (DE at 6). Indeed, it was this unique structure that entitled No Labels' exemption from Arizona's otherwise constitutional ballot access and political party statutes, and this is only apparent after reviewing the party's by-laws. The uniqueness of this situation is highlighted by the fact that neither the parties nor the Court could identify a case with a similarly structured political party, despite decades of cases probing the margins of the First and Fourteenth Amendment rights of political parties, including minor parties, and state regulation. Nonetheless, No Labels asks this court to "hold the Secretary accountable for his conduct." (DE 33 at 5). But this Court has acknowledged that the Secretary's conduct at issue here was the Secretary strictly adhering to state statute and established law. (DE 25 at 7). It would be manifestly unjust to require a state agency to pay attorney's fees when its conduct has been adjudged by this Court as simply

following the law, and the Court is rightfully empowered to deny fees in this peculiar instance.

To assist the Court, it may be helpful to consider the outcome of more common issues where candidates are removed from ballots under Arizona law. As discussed, "any person" can run for office as a representative of that party if they affiliate with that party. A.R.S. § 16-311(A). Once a candidate qualifies for the ballot, the only mechanism for keeping that candidate off the ballot is a lawsuit called a nomination petition challenge. A.R.S. § 16-351. Unlike challengers before a court, who have significant discretion regarding what signatures and practices they challenge, the Secretary does not. *Compare* A.R.S. § 16-351(B) (allowing any elector to "challenge a candidate for any reason relating to qualifications for the office sought as prescribed by law, including age, residency, professional requirements or failure to fully pay fines, penalties or judgments as prescribed in §§ 16-311, 16-312, and 16-341, if applicable." *with* A.R.S. § 16-311(I) (providing only two bases for which the Secretary could reject candidate filings). The rationale for making the receipt of nomination papers a ministerial act ensures every eligible candidate makes it to the ballot, and any challenge is heard by a neutral third-party, not summarily accepted or rejected by a single official, particularly if the challenge includes novel or untested legal theories.

Candidate nomination petition challenges are brought every cycle in Arizona; sometimes those challenges are based purely on insufficient qualifying documentation, but other times there are more complex legal issues that must be considered and resolved. For example, in 2018, the Arizona Supreme Court decided the residency of former state house member Don Shooter. *Backus v. Shooter*, 2018 WL11622748 (June 27, 2018) (decision order). In 2020, the Arizona Supreme Court decided the impact of the candidate using a mailing, rather than residential address, on their petitions and their circulator affidavit, *Lohr v. Bolick*, 249 Ariz. 428, 434, ¶ 24 (2020). Ultimately, the Court disallowed petitions when the circulator (and candidate in this case) mailing

address was used on the circulator affidavit, but that was not enough to remove the state house member from the ballot. *Id.* And in 2022, state representative Mark Finchem, and Congressmen Paul Gosar and Andy Biggs, were all challenged pursuant to the Insurrection Clause of the 14th Amendment. The Secretary was named as a defendant in each of these lawsuits, so that should a candidate be blocked from the ballot, the Secretary would receive and be bound by that Court order. However, in none of these cases were fees awarded, even though they were sought in the 2022 challenge.

The reason fees are not awarded against the government actors in these cases is because they are following the law, and it is the province of the judicial branch, and not elected public officials performing their ministerial duties under the law, to determine which candidates should have access to the ballot. Indeed, the United States Supreme Court recently ruled that "States have no power under the Constitution to enforce Section 3 with respect to federal offices, especially the Presidency." *Anderson v. Trump*, 601 U.S. ___ (2024), slip op. at 6. Even in cases where some individuals might find that there was a plain violation of the law, for instance when Representative Shawnna Bolick listed a mail box store instead of her "actual residence address," the Court had to determine if providing a non-residential address substantially complied with Arizona election laws. *Lohr v. Bolick* 249 Ariz. at 432, ¶¶ 8-11. This underscores that even when they appear straightforward, legal issues are to be resolved by the courts, not the Secretary. This Court should exercise its broad discretion not to penalize the Secretary for following the law.

**III.   Fees Should Not be Granted When the Secretary Faced a Hobson's Choice of Rejecting Arizona Law or Conducting His Own *Anderson/Burdick* Analysis.**

This Court has the freedom to exercise discretion in awarding fees, but the Secretary had no such discretion in deciding whether to accept No Labels candidates' statements of interest, or any other filing. *Sims Printing Co. v. Frohmiller*, 47 Ariz. 561, 565 (1936) (explaining that as long as the candidate filings substantially comply with the

law, "it is the duty of the secretary of state to accept and file it. It is nowhere made his duty to check the names of signers with the registered voters of the county or precinct as indicated on the nomination paper before he files it."). It is more than not having a process to choose which nomination papers to accept and which to reject; it recognizes that the Secretary, as a filing officer, should not be making discretionary decisions and legal analyses whether candidates can appear on the ballot.

The Secretary has a mandatory duty to accept filings that are prima facie valid for a few reasons. First, Arizona law has entrusted the courts to determine whether a candidate qualifies for the ballot through a statutory process that can be initiated by any qualified elector. A.R.S. § 16-351(A). The statutes outline the process that must be followed, including identification of potential qualification deficiencies and review by the county recorders. *Id*. (D)-(G). Unlike an executive decision, this process brings it into open court and allows the real parties in interest to be active participants. Second, the potential for partisan abuse if filing officers were empowered to reject filings, combined with the strict and narrow timelines involved in the candidate nomination process, would provide a potential for the filing officers, rather than the voters, to decide who can participate in elections. Indeed, No Labels agreed when the Secretary acted in his ministerial capacity and accepted their new party petitions in early 2023, despite allegations from the Arizona Democratic Party that the petitions contained fatal errors. The validity of No Labels' new party petitions were resolved in Maricopa County Superior Court, which demonstrates the importance of the Secretary following the text of the statute absent an order to the contrary. *See, e.g. Ariz. Democratic Party v. No Labels, Adrian Fontes, et al*, CV2023-004832.

The rule to determine whether election regulations are valid, the *Anderson/Burdick* test, *requires a judge* to determine whether the burdens on the claimant outweigh the interests of the state. This constitutional analysis is squarely within the purview of this Court. "It is emphatically the province and duty of the judicial

department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Because it is the duty of this Court to determine what is constitutional, and the duty of the Secretary to follow the law, the Secretary had no ability to accede to No Labels' demands absent facially invalid filings from the aspiring No Labels candidates or a court order. It is of compelling importance that election officials fastidiously apply the law. It is only this steadfast dedication to following the law that will ensure that election officials do not succumb to improper pressure and abide by the will of the people.

The Court should exercise its discretion *not* to award fees in this case because the Secretary was following a constitutional law. While this Court found that No Labels' by-laws entitle it to avoid the primary, and thus "put[s] the onus on the Secretary to enforce the Party's bylaws," it was due to the narrow circumstances here rather than a generally applicable rule. (DE 25 at 6). An award of fees in a case like this could provide perverse incentives for election officials to follow the demands of partisan actors, rather than following the law to the best of the officials' ability, to avoid a potentially crippling fee award. For these reasons, the Court should not award fees.

### IV.    In the Alternative, These Charges Should be Disallowed.

The lodestar amount of an attorneys' fee award under 42 U.S.C. § 1988 is determined by multiplying reasonable hourly rates and a reasonable number of hours, but excluding "excessive, redundant, or otherwise unnecessary" hours. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). Therefore, if the Court decides in its discretion to award fees, it should reduce the fee award for the following reasons.

#### A.  Charges Related to the State Law Claim[1]

Because No Labels failed to prevail on the state law claim, and because the work for the state law claim is discrete from the constitutional claims, this Court should exercise its discretion to not award any fees for the state law claims. Courts do not award fees when parties have not prevailed. *Herrington v. Cnty. of Sonoma*, 883 F.2d

---

[1] Attached to Karlson Declaration, Ex. 1.

9

739 (9th Cir. 1989). "Liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against the defendant." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (cleaned up).

Because Plaintiffs spent approximately one-third to one-half of their briefing and time at argument addressing the state law issue, which is unique and upon which they did not prevail, Plaintiff's general charges of researching, drafting, and reviewing legal claims and documents, as well as preparing for hearings, should be likewise reduced by one-third to one-half as follows:

| Attorney | Hours | Billed | 50% Reduction | 33% Reduction |
|---|---|---|---|---|
| Delgado | 126.9 | $37,677.00 | 18,838.50 | $12,433.14 |
| Pappas | 78.4 | $33020.00 | $16,510.00 | $10,896.60 |
| Cone-Roddy | 20.7 | $7,617.00 | $3,808.50 | $2,513.61 |
| Rosenbaum | 19.9 | $17,313.00 | $8,656.50 | $5,713.29 |
|  |  |  | -$47,813.50 | -$31,556.64 |

A reduction in hours by 122.95 (half) or 81.15 (one-third) would mean a reduction in between $47,813.50 and $31,556.64 for the state law claims which are distinct and which No Labels did not prevail on.

Likewise, the costs devoted to pre-trial briefings should be reduced by one-half to one-third as well. The total pre-hearing Westlaw Legal Research costs were $12,149.20, and if reduced by one-half would be $6,074.60. To reduce that cost by one-third, $4,009.24 would be deducted from the total cost.

Therefore, the total attorney fee award of $142,513.50 should be reduced to between $94,700.00 and $110,956.90 to account for the distinct claim No Labels did not prevail on. The Westlaw Research cost award should also be reduced to between

$6,074.60 and $8,018.47 to account for the distinct legal research No Labels conducted on a claim on which they did not prevail.

## B. Duplicative or Otherwise Inappropriate Charges[2]

Because No Labels' counsel included multiple entries for the same or substantively the same work, this Court should exercise its discretion to not award these fees. "[T]he court's 'central' responsibility [is] to 'make the assessment of what is a reasonable fee under the circumstances of the case." *Farrar*, 506 U.S. at 115. The lodestar approach ensures that a *reasonable* number of hours were worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). For example, the following work has been billed, as grouped together by project.

| Filing or Work Product | Hours | Billed |
|---|---|---|
| Complaint | 45.25 | $15,842.50 |
| Mot. Prelim. Inj. | 35.35 | $15,241.00 |
| Reply | 54.7 | $19,681.00 |
| Moot Court | 17.1 | $7,755.00 |

This chart does not include, for example, any of the hours billed by the attorney who presented oral argument to the court in the total reported under "moot court." The attorneys who did not participate in the approximately one hours' worth of argument before this Court thus devoted more than two full working days to prepare for the moot court, on top of the overlapping work for the documents they filed in this case.

It is notable that while there is significant overlap between the Complaint, Motion for Preliminary Injunction, and Reply, those three filings alone incurred roughly $45,000 in fees, excluding Westlaw Research costs. Likewise, any moot court preparation and participation merely retreads this ground. Due to the striking similarities between the arguments raised, the cases researched and included in these cases, it would be unfair to double or triple bill the Secretary for multiple layers of "review." "Section 1988's aim is

---

[2] Attached to Karlson Declaration, Ex. 2.

1  to enforce the covered civil rights statutes, not to provide a 'form of economic relief to
2  improve the financial lot of attorneys.'" *Perdue v. Kenny A. ex. Rel. Winn*, 559 U.S. 542,
3  553 (2010).  This Court should just use its discretion to reduce these duplicate charges
4  by one-half, or $58,519.50

5  In addition to these charges, there are a few miscellaneous charges that should be
6  rejected by this Court as inappropriate.  There was a total of $87.00, or 0.3 hours of work
7  for research regarding the rules of service after the Secretary had been served and
8  counsel for the Secretary had already filed their notice of appearance.  This fee
9  application includes a whopping $345.50 worth of charges for a combined total of 0.6
10 hours to "review" the Secretary's notice of appearance.  There is a charge for
11 "Review[ing] and exchange emails re campaign finance registration" for $87.00, but
12 campaign finance registration was never at issue in this case.  Finally, there were two
13 charges for parking for the January 5, 2024, preliminary injunction hearing for $12.00.
14 One was dated January 5, 2024, as expected, but the other one is dated for January 16,
15 2024.  These expenses, while small ($531.50), are inappropriate and should not be
16 included in the fee award, if any award is granted.

17 For these reasons, the Secretary respectfully requests that this Court reduce the
18 total fee award by $59,051, if it does not reject the application for fees in total.

### C. Charges for Work that is Redacted[3]

20 Because No Labels' counsel included in its fee application bills for which the
21 subject has been redacted, this Court should exercise its discretion to not award these
22 fees.  These redactions make it impossible to determine whether the work was
23 appropriate and reasonable, and whether it was related to the successful claim.  Indeed,
24 given the fact that there was an entry related to "campaign finance registration," it is
25 impossible to determine whether these bills are related to this litigation at all.  In
26 instances where the redacted work can be segregated, then it is within the Court's

---

[3] Attached to Karlson Declaration, Ex. 3.

discretion to remove only that portion. However, when the attorney engaged in "block billing" and did not distinguish between redacted work and other work, the entire time entry should be struck.

The entire time billed for these entries with redactions is 46 hours and $20,986. If time that is not block billed is removed, that reduces the amount to 35.9 hours and $17,564. The Secretary respectfully requests that this Court reduce the award by $20,986, if it does not reject the application for fees in total.

## CONCLUSION

For these reasons, this Court should exercise its discretion and not award fees in this instance. No Labels failed completely in its state law claim, and the Secretary, as a filing officer, has a non-discretionary duty to accept filings. It is unfair to penalize the Secretary for following the law.

In the alternative, the Court should carefully review the three types of inappropriate and/or duplicate claims, and significantly reduce No Labels' attorneys' fee award because it includes the state law claim they did not prevail on, includes duplicated work by many lawyers, and includes billing entries that cannot be adequately analyzed.

Respectfully submitted this 11th day of March, 2024.

Kristin K. Mayes
Attorney General

 /s/ Kara Karlson
Kara Karlson
Karen J. Hartman-Tellez
Senior Litigation Counsel
Kyle Cummings
Assistant Attorney General
*Attorney for Defendant Arizona Secretary of State Adrian Fontes*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on 11th day of March, 2024, I filed the forgoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing

 /s/Monica Quinonez